## 44868. LIPHAM v. THE STATE.
### (364 SE2d 840)

GREGORY, Justice.

Appellant, William Anthony Lipham, was convicted in Coweta County of murder, rape, armed robbery and burglary. He was sentenced to death for the murder. He appeals.[1]

1. Kate Furlow, the 79-year-old victim, was last seen by her daughter-in-law at 6:00 p.m. on December 4, 1985. The next day, the victim's son tried to telephone her but she did not answer. He went to her home and observed that the glass had been broken out of the front door and that the living room was in disarray and called the police.

Investigators searched the house and found the victim lying on her bed, nude from the chest down, with a gunshot wound in her head. A .25 caliber bullet was discovered in the mattress underneath her head.

Investigators interviewed the victim's neighbors. One of them stated that a young man had been in her kitchen at 12:30 a.m. on December 5. This neighbor testified that when she asked the man why he was there, he responded only by shouting "Ronnie," and then leaving. She identified Lipham as the man who had been in her home.

Ronnie Simon testified that he gave Lipham a ride the night of December 4, and dropped the defendant off near the victim's home. The defendant had with him a .25 caliber pistol. Simon's girl friend testified that the defendant came by Simon's trailer early the next morning, carrying his gun, and a small bag containing some change and some costume jewelry. The defendant told her, "Not bad for a night's work. . ."

Police recovered from the defendant's brother a .25 caliber pistol which was shown by ballistics examination to be the murder weapon. The defendant was arrested in Douglasville, Georgia, on January 14, 1986.

The defendant gave a statement to the police admitting that he entered and ransacked the victim's home looking for something to steal. However, he claimed that another person was present and used the defendant's gun to kill the victim.

a. The defendant contends that his conviction for rape is not supported by the evidence because the evidence does not show that sexual intercourse occurred. We disagree.

---

[1] The death sentence was imposed on February 12, 1987. A motion for new trial was filed February 20, 1987, and denied June 25, 1987. A notice of appeal was filed July 16, 1987, and the case was docketed on July 22, 1987. After the parties were granted extensions of time to file their briefs and to prepare for oral argument, the case was orally argued on October 13, 1987.

The victim's body was found lying on her bed, nude from the chest down, with her legs spread apart. She had a "pressed-contact" gunshot wound on the left side of her head, the location of which suggests that the killer was at least on the bed and very possibly lying on top of the victim when he shot her. The autopsist testified that he discovered a large amount of fluid in the victim's vagina that could not be positively identified as seminal, but would have been unusual in the absence of sexual intercourse. A pubic hair discovered on the victim's housecoat was consistent with that of the defendant. We conclude that the evidence, although circumstantial, was sufficient to support a finding that the defendant had carnal knowledge of the victim.

b. The defendant further argues that even if the evidence is sufficient to support a finding that he had sexual intercourse with the victim, it does not show whether it occurred before or after her death.

He contends that if he first killed the victim and only then had sexual intercourse with her, he is not guilty of rape. His authority for this proposition is a federal district court opinion, *Gibson v. Jackson*, 443 FSupp. 239 (M.D. Ga. 1977), which states: "For the petitioner to be guilty of rape, the victim must have been a person, a living human being; if dead before the act — as terrible and disgusting as it may be — the act is not rape." Id. at 247. We are not persuaded by this authority.

The offense of rape is defined in our Code as follows: "A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a).

There is nothing in this code section which precludes a finding of rape if the victim is not alive at the moment of penetration. What the jury must find is that the defendant had carnal knowledge of the victim "forcibly and against her will." Id.

We have not heretofore addressed the effect of the use of deadly force to overcome the victim's resistance in a rape case. However, with respect to the offense of armed robbery, we have held that where the defendant has used an offensive weapon first to kill his victim and then to take his money, so that the victim is dead when the theft actually is consummated, the theft occurred nonetheless with the "benefit of force or fear which is the essence of armed robbery as defined in OCGA § 16-8-41." *Prince v. State*, 257 Ga. 84, 85 (355 SE2d 424) (1987).

We think this reasoning is equally applicable in a rape case. If the element of force is satisfied where the defendant has used less than deadly force to overcome the victim's resistance so as to allow him to have carnal knowledge of the victim, the element of force is

surely no less satisfied when the defendant has used deadly force to accomplish his aim.

As for the remaining element, "against her will" has been interpreted to mean "without her consent," and has been satisfied in cases in which the victim was drugged, asleep, unconscious, or in a coma. See, e.g., *Brown v. State*, 174 Ga. App. 913 (331 SE2d 891) (1985). We see no reason why it should be any less applicable in a case in which the defendant has rendered the victim permanently unconscious by killing her.

The facts here differ fundamentally from a case in which one happens upon the corpse of a female and engages in sexual intercourse with it. The use of force in the former and the absence of force in the latter is the difference. One is rape and the other necrophilia, made a crime under OCGA § 16-6-9.

The evidence in this case supports the jury's finding that the defendant had carnal knowledge of Kate Furlow forcibly and against her will notwithstanding that it is unclear whether the defendant first raped the victim and then killed her, or first killed the victim and then raped her. Compare *Ross v. State*, 254 Ga. 22, 23, 34 (326 SE2d 194) (1985).

c. The defendant also contends that the evidence is insufficient to support the conviction for armed robbery. He argues that the evidence fails to show that a handgun was used in the taking of the victim's property or that it was even present when the victim's property was taken. We disagree.

It is undisputed that the victim was killed with a handgun. The jury was entitled to infer from the evidence that this defendant, "with intent to commit theft, [took] property of another from the person or the immediate presence of another by use of an offensive weapon . . . ." OCGA § 16-8-41, whether "the victim [was] shot before the taking . . . [or] after the taking. . . ." *Young v. State*, 251 Ga. 153, 160 (303 SE2d 431) (1983) (Hill, C. J., concurring in part and dissenting in part). Accord *Prince v. State*, supra.

d. The evidence supports the defendant's conviction on all four counts. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. At a pre-trial hearing, Michael Dowd, a member of the Bar of the State of New York, requested permission to represent the defendant *pro hac vice*. The defendant concurred in this request. The trial court ruled that Dowd could participate in the trial of the case, question witnesses, argue any motions, or make closing arguments on behalf of the defendant, but that Steven Fanning would remain lead counsel for the defendant. The court stated that he knew Mr. Fanning to be an experienced, capable attorney familiar with Georgia law and procedure, while Mr. Dowd's knowledge and abilities were un-

known to the court.

Dowd refused to accept any limitations on his representation of the defendant, and left, refusing to participate further in the case.

The defendant argues that the trial court's ruling deprived him of his right to decide for himself who his lead attorney would be.

Of course, an indigent defendant has no right to compel the trial court to appoint an attorney of his own choosing. *Kesler v. State*, 249 Ga. 462 (12) (291 SE2d 497) (1982). On the other hand, if an indigent defendant can make his own arrangements for attorney representation, whether with the financial assistance of family or friends, or by persuading an attorney to represent him *pro bono*, he ordinarily may do so.

In this case, however, the attorney whose assistance the defendant sought was not a member of the bar of this state, and neither the attorney nor the defendant had a constitutional right to *demand* that the attorney be allowed to represent the defendant in this case. *Williams v. State*, 157 Ga. App. 494 (2) (277 SE2d 781) (1981). It was, rather, a matter governed by the trial court's sound exercise of discretion, which will not be disturbed on appeal unless abused.

Dowd failed to submit a proper application for admission to practice in the trial of this case pursuant to Rule 4.4 of the Uniform Rules for the Superior Courts, 253 Ga. 799, 814, and the defendant was already well-represented by two qualified members of the Georgia bar. In these circumstances, the trial court would have acted within the limits of its discretion had it refused altogether to allow Dowd to participate in the trial of this case. It follows, then, that the trial court did not abuse its discretion by offering Dowd a limited admission to practice in this case.

3. The trial began over a year after the crime was committed. Compare *Patton v. Yount*, 467 U. S. 1025 (104 SC 2885, 81 LE2d 847) (1984). Although many of the jurors had heard something about the case, none had formed fixed opinions about the guilt or innocence of the defendant. Only four prospective jurors were excused for cause — three because of their opposition to the death penalty and one for business reasons. We find no error in the denial of the defendant's motion for change of venue. *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987).

4. Nor do we find any error in the court's denial of the defendant's motion for severance. *Childs v. State*, 257 Ga. 243 (1) (357 SE2d 48) (1987).

5. The defendant concedes that blacks, whites, men and women were all well represented on both the grand and traverse jury lists in Coweta County. See Rule II (A) (6) of the Georgia Unified Appeal Procedure, as amended, 252 Ga. A-13 et seq. Nevertheless he contends his challenges to the array should have been granted because

non-voters are not included on the list. He notes that only 19.2% of all eligible Coweta County women are on the traverse jury list, and only 4.9% of all eligible Coweta County women are on the grand jury list. Similar figures are claimed with respect to blacks.

As we have pointed out, "the voter list is [by law the] appropriate primary source from which jurors may be selected and must be supplemented only if the resulting list fails to meet constitutional requirements; i.e., fails to represent a fair cross-section of the community. [Cits.]" *Ingram v. State*, 253 Ga. 622, 627 (323 SE2d 801) (1984).

The percentages cited by the defendant show only that the jury lists are smaller than the total eligible population of the community.[2] "There is no requirement that the jury list include the name of every citizen of the county eligible for jury service. The list must include a *fair-cross-section* of the eligible members of the community, not every eligible member of the community." Id. at 629. The defendant's challenges to the arrays were properly denied.

6. Finally, the defendant complains of the prosecutor's sentencing-phase closing argument, in which he said to the jury: "Forgive him. I'll say to you, that's fine, but you don't have that right. I'll tell you who has the right to forgive. Kate Furlow has the right to forgive him. God has the right to forgive him. You don't."

This argument is similar to one we condemned in *Ford v. State*, 255 Ga. 81, 93-95 (335 SE2d 567) (1985). Here, as in *Ford*, the defendant did not object to the argument. However, in this case, the trial court, on its own, rebuked the prosecutor for making the argument and gave the following instructions to the jury:

"THE COURT: Ladies and gentlemen, just a moment ago before and during the course of Mr. Mallory's argument, he made some reference to the fact that the right to forgive the defendant is with God and Ms. Kate Furlow, implying that it was not for you to forgive and it was up to God and Kate Furlow to forgive. Ladies and gentlemen, you have found the defendant guilty of murder and guilty of these offenses. This defendant is not going to be forgiven of anything. That was improper argument by Mr. Mallory and Mr. Mallory, don't do that again, please.

"MR. MALLORY: No, Your Honor.

---

[2] The total 18-and-over population of the county is 26,930, according to the most recent census. There are 5,179 names on the traverse jury list and 1,289 on the grand jury list. The traverse jury list therefore contains 19.2% of the eligible population, while the grand jury list contains 4.8% of the eligible population. If all cognizable groups are equally represented on the jury lists, then 19.2% of the community population of each cognizable group will be on the traverse jury list, and 4.8% of each cognizable group will be on the grand jury list. Thus, figures comparable to those cited by the defendant will be found not only with respect to women and blacks, but also with respect to men and whites, or to any other group in the community.

"THE COURT: The question here is not whether the defendant will be punished for this murder. The question is how much he will be punished. Will he be given the death penalty or will he be given life imprisonment. Neither the death penalty nor life imprisonment is forgiveness and Mr. Mallory was incorrect when he was talking about that. You have the right to be merciful in this case, if you think that's the right thing to do, and if you are merciful in this case you are not forgiving the defendant; and I instruct you not to consider any argument made by the State along those lines. That's an improper argument."

In light of these instructions, we find no reversible error.

### Sentence Review

7. The jury found as aggravating circumstances that the offense of murder was committed while the offender was engaged in the commission of the offenses of rape, armed robbery and burglary. OCGA § 17-10-30 (b) (2). The evidence supports the finding that the offense of murder was committed while the defendant was "engaged in the commission of" these other offenses. *Davis v. State*, 255 Ga. 588, 593 (340 SE2d 862) (1986).

In addition, the jury found the § b (7) statutory aggravating circumstance. However, the jury returned a disjunctive finding of "torture *or* depravity of mind." The finding should have been returned in the conjunctive. See *Page v. State*, 256 Ga. 191, 194 (345 SE2d 600 ) (1986); *West v. State*, 252 Ga. 156, 162 (313 SE2d 67) (1984); *Patrick v. State*, 247 Ga. 168 (274 SE2d 570) (1981). Nevertheless, the death sentence is affirmed on the basis of the remaining findings of statutory aggravating circumstances. *Davis v. State*, supra, 255 Ga. at 595.

8. We do not find that the sentence of death was imposed as the result of passion, prejudice or other arbitrary factor, and we do not find that the sentence of death is excessive or disproportionate to sentences imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

### Appendix.

*Curry v. State*, 255 Ga. 215 (336 SE2d 762) (1985); *Ross v. State*, 254 Ga. 22 (326 SE2d 194) (1985); *Devier v. State*, 253 Ga. 604 (323 SE2d 150) (1984); *Allen v. State*, 253 Ga. 390 (321 SE2d 710) (1984); *Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984); *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982); *Messer v. State*, 247 Ga. 316 (276 SE2d 15) (1981); *Justus v. State*, 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State*, 246 Ga. 598 (272 SE2d 475) 1980); *Cape v. State*, 246 Ga. 520 (272 SE2d 487) (1980); *Thomas v. State*, 245 Ga. 688 (266

814

SE2d 499) (1980); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Spraggins v. State,* 243 Ga. 73 (252 SE2d 620) (1979); *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976).

DECIDED FEBRUARY 12, 1988.

*Fanning & Hudson, Steven E. Fanning,* for appellant.
*William G. Hamrick, Jr., District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.