The STATE of Ohio, Appellee,

v.

COLLINS, Appellant.

[Cite as *State v. Collins* (1990), 66 Ohio App.3d 438.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–691.

Decided March 13, 1990.

*Michael Miller*, Prosecuting Attorney, and *Joyce Anderson*, for appellee.
*Steven Mathless*, for appellant.

PEGGY BRYANT, Judge.

Defendant-appellant, Floyd Lewis Collins, appeals from his convictions for rape and involuntary manslaughter.

On January 13, 1987, defendant, Anthony Cox, and Lee Granger attended a basketball game between East and Independence High Schools at East High School in Columbus. When the three men were leaving after the game they met three teenage girls and decided to give the girls a ride home in Granger's car. The girls were all freshmen at Independence High School who had attended the basketball game. Before taking the girls home, the group stopped at a drive-through and bought beer. While in the car, everyone smoked marijuana and drank, after which Granger took two of the girls home. According to the testimony of Cox and Granger at trial, the third girl, Nichole Jones ("Nichole"), did not want to go home because she did not want her parents to see her drunk. Granger testified at trial that he then stopped at defendant's house so that defendant could go in and get some money. After defendant came back, they stopped by a bar, but did not go in. Granger said that Cox and defendant then grabbed Nichole and threw her into the back seat. Granger drove off with defendant and Nichole in the back seat. Granger testified that, as he was driving, he looked in the back seat and saw that defendant "had both his hands around her neck, and he beat her head against the rear door four times. I was looking at that." Granger then pulled off into a construction site beside the road.

Cox did not testify that they had stopped at a bar. He testified that "all three of us grabbed Nichole," apparently while still parked near defendant's house. After arriving at the construction site, defendant grabbed Nichole and "tied something around her mouth" and pushed her head against the window.

Granger testified that he and Cox got out of the car at the construction site and that he saw defendant having sex with Nichole in the back seat. Defendant then got out of the back seat and Cox got in. In contrast, Cox testified that he and Granger were sitting in the front seats of the car while defendant was with Nichole. The three men then got out of the car, and Cox got in the back seat. Cox said he saw that Nichole was not moving, so he did not have sex with her. Granger then had sex with Nichole, but only after defendant threatened to "beat him up" if he did not.

Granger later pulled Nichole, who was not moving, out of the car and left her in an alley, where a passerby discovered Nichole's dead body the next day. At trial, a pathologist from the Franklin County Coroner's office testified that Nichole had died of strangulation.

Defendant, Cox, and Granger were later charged with aggravated murder. Granger was convicted of involuntary manslaughter and kidnapping before defendant's trial, and Cox pleaded guilty to involuntary manslaughter, attempted rape, and kidnapping.

The grand jury indicted defendant on one count of aggravated murder and one count of rape. On May 10, 1989, a jury found defendant guilty of rape and guilty of involuntary manslaughter as a lesser-included offense of aggravated murder. On appeal, defendant assigns the following four errors:

"1. Appellant's conviction for rape was against the manifest weight of the evidence because the victim was dead at the time of the alleged rape.

"2. The trial court's allowance of testimony by a police officer of an out of court identification by Appellant's mother and girlfriend of photographs of a red coat that allegedly belonged to Appellant which was found underneath the murder victim and which police said was the key evidence which linked Appellant to the murder victim together with admission of photographs of the red coat which had the signature of Appellant's mother and girlfriend on the back violated the rule against hearsay, had a substantial impact upon Appellant's cause, and warranted reversal for a new trial.

"3. The trial court erred in refusing to give Appellant's requested jury instruction that Appellant cannot be found guilty of attempted rape if he did not engage in sexual conduct with the body of the murder victim until after her death.

"4. The trial court erred in allowing a police officer to state his opinion about the amount or type of evidence there was against Appellant."

In his first assignment of error, defendant argues that his conviction for rape was against the manifest weight of the evidence because the crime of rape requires that the victim be alive when sexual conduct occurs. The state makes two arguments in response: (1) sufficient evidence existed for the jury to find that the victim was alive at the time of the sexual conduct; and (2) even if the victim was not alive, the jury could have convicted defendant of rape.

The state first contends that evidence in the transcript shows that the victim was alive at the time of the alleged rape. However, the state does not cite anything substantial from the transcript to buttress its contention; instead, the state asserts that the jury could discount Cox's and Granger's testimony and infer that Nichole was alive when the incident occurred from the lack of any other evidence to indicate that she was already dead. Granger testified that defendant attacked Nichole before the car reached the construction site, after which Nichole "did not move again." He also testified that, after defendant and Cox had each been alone with Nichole in the back seat, "I was more than sure that at this point Nichole was dead * * *. So I got in the car with Nichole, and I checked her pulse to see if I was right or if I was—if possibly I could have been wrong. When I checked her pulse, she didn't show any vital signs." Granger later testified that he had had some emergency medical training. Cox's testimony somewhat contradicted Granger's in that he did not say defendant attacked Nichole on the way to the construction site. However, he did testify that, after the car had stopped, defendant pushed Nichole's head against an inside window of the car. He also testified that Nichole had stopped moving before anyone had sex with her. In addition, he said that he and defendant talked while Granger was in the back seat and concluded that Nichole was dead "because she wasn't moving." The only other testimony at trial on this issue was that of the pathologist from the Franklin County Coroner's office, who testified that he could not determine the victim's "hour of death." Due to the lack of evidence presented by the state, we conclude that if we were to assume that the state must prove, as an element of the offense of rape, that the victim is alive at the time of the sexual conduct, then the manifest weight of the evidence showed that, in this instance, the state did not meet its burden of proving defendant guilty beyond a reasonable doubt.

In regard to the state's second argument, apparently no reported Ohio cases have addressed the issue of whether the crime of rape requires a living victim. The state cites *State v. Booker* (Feb. 19, 1986), Hamilton App. No. C–850376,

unreported, 1986 WL 2209, in which the court found that the crime of aggravated robbery does not require a living victim. However, we find *Booker* inapposite, not only because the case involved a different crime, but because the *Booker* court's opinion does not make clear the basis for its determination. Defendant cites *State v. Limle* (Aug. 30, 1983), Franklin App. No. 83AP–50, unreported, 1983 WL 3663. However, *Limle* merely indicates that the defendant in that case contended the trial court should not have convicted him of attempted rape because the victim was dead when the incident occurred. The *Limle* court, though, did not reach that issue, since "[s]ufficient evidence was presented by the prosecution to support the conclusion" that the victim was alive. *Id.* at 6.

Defendant cites cases from other jurisdictions that do support his position. See *Commonwealth v. Sudler* (1981), 496 Pa. 295, 303, 436 A.2d 1376, 1379–1380 (prosecution must prove, beyond a reasonable doubt, that victim was alive); *People v. Stanworth* (1974), 11 Cal.3d 588, 604, 114 Cal.Rptr. 250, 262, 522 P.2d 1058, 1070, fn. 15. Other cases from outside Ohio support the state's position. See *State v. Brobeck* (Tenn.1988), 751 S.W.2d 828, 832; *Lipham v. State* (1988), 257 Ga. 808, 809–810, 364 S.E.2d 840, 842–843, certiorari denied (1988), 488 U.S. 873, 109 S.Ct. 191, 102 L.Ed.2d 160. Cf. *State v. Usry* (1987), 205 Conn. 298, 317–318, 533 A.2d 212, 221–222 (sexual assault in the first degree).

Apart from the case law, defendant's argument relies primarily upon the Committee Comment to R.C. 2927.01 (abuse of a corpse). In contrast to rape, which is an aggravated felony of the first degree, R.C. 2907.02(B), abuse of a corpse, is a misdemeanor of the second degree. R.C. 2927.01(C). The comment to R.C. 2927.01 states that the legislature intended the statute to cover "conduct formerly prohibited by specific prohibitions against grave robbing and unlawful dissection of a corpse. It also includes other kinds of conduct, such as *copulating with or otherwise mistreating a corpse.*" (Emphasis added.) Defendant argues that the inclusion of sexual abuse of a corpse under R.C. 2927.01 demonstrates that the legislature considered the sexual abuse of a dead body, no matter how bizarre or offensive, to be a lesser crime than "indignities to the living." *Sudler, supra,* 496 Pa. at 303, 436 A.2d at 1379. See, also, *Stanworth, supra,* 11 Cal.3d at 605, 114 Cal.Rptr. at 262, 522 P.2d at 1070, fn. 15 ("section 263 states that '[t]he essential guilt of rape consists in the outrage to the person and feelings of the female * * *.' * * * It is manifest that the 'feelings' of a female cannot be offended nor does the victim suffer 'outrage' where she is dead when sexual penetration has occurred.").

We find defendant's argument unpersuasive. As a starting point, we note that the rape statute does not explicitly require a living victim. R.C. 2907.-02(A)(2) merely states, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." More important, we conclude that the existence of the abuse of corpse statute does not indicate that the legislature intended conduct like defendant's and his companions' to fall outside the scope of the rape statute. Even though the victim died during the incident in the present case, defendant's conduct, when viewed in its entirety, involved "indignities to the living," unlike the conduct that R.C. 2927.01 contemplates. In the present case, defendant "engage[d] in sexual conduct" with the victim only after he had "purposely compel[led]" the still living victim "to submit by force." R.C. 2907.02. The fact that the force was sufficient to kill the victim does not lessen the seriousness of defendant's actions. We therefore substantially agree with the Georgia Supreme Court's statement in *Lipham, supra,* that "[t]he facts here differ fundamentally from a case in which one happens upon the corpse of a female and engaged in sexual intercourse with it." *Id.,* 257 Ga. at 810, 364 S.E.2d at 842. See, also, *Brobeck, supra,* 751 S.W.2d at 832 ("we are likewise unable to embrace the notion that the fortuitous circumstance, for the rapist, that death may have preceded penetration by an instant, negates commission of the crime of aggravated rape and reduces it to a relatively minor offense associated with erotic attraction to dead bodies"). Cf. *Usry, supra,* 205 Conn. at 317–318, 533 A.2d at 222 ("sexual assault in the fourth degree occurs when an assailant commits a sexual assault on a dead body, but the assailant is not involved in causing the victim's death. When, however, the assailant kills the victim in order to commit a sexual assault, he has committed sexual assault in the first degree").

We conclude that, although defendant may raise the possibility that his actual crime was abuse of a corpse, the fact that the victim may have been dead when the sexual conduct occurred does not, in itself, lessen defendant's culpability herein, nor does the state have to prove in this case, as an element of the offense of rape, that the victim was alive when sexual conduct occurred. In the present case, we find that the manifest weight of the evidence supported defendant's conviction for rape. We therefore overrule defendant's first assignment of error.

■ We next address defendant's third assignment of error, in which defendant argues that the trial court's instructions to the jury on attempted rape were erroneous. The court, in its instructions, stated:

"Before you may find the defendant guilty of rape, the state must prove beyond a reasonable doubt that the alleged victim was alive at the time the

sexual conduct occurred. However, if you find that the state has failed to prove that the alleged victim was alive at the time of the sexual conduct by proof beyond a reasonable doubt, you will continue your deliberations and consider the lesser of—the lesser offense of attempted rape, which I will next define for you."

Defendant argues that the trial court should have instructed the jury that a defendant cannot be convicted of attempted rape if the victim was dead at the time of the sexual conduct. We need not decide, though, whether the trial court's instruction was erroneous, since "a conviction should be affirmed unless an incorrect instruction prejudiced the jury." *State v. Smith* (May 12, 1988), Franklin App. No. 87AP–300, unreported, 1988 WL 48024 (citing *Porello v. State* [1929], 121 Ohio St. 280, 289–290, 168 N.E. 135, 138). The error was nonprejudicial in the present case because the jury did not convict defendant of attempted rape. Moreover, the instruction on attempted rape did not taint the rape instruction, since, as the previously quoted passage from the instruction indicates, the trial court clearly told the jury to apply a standard to the rape charge that differed from the standard relevant to an attempted rape charge. Accordingly, we overrule defendant's third assignment of error.

■ In his second assignment of error, defendant argues that the trial court erred by admitting hearsay testimony regarding a red jacket and by admitting photographs of the jacket that involved a hearsay identification. The police had found the red jacket under Nichole's body. Detective Richard Sheasby testified at trial that defendant's mother and girlfriend identified the jacket as defendant's after looking at photographs of it.

The state argues that the evidence of the out-of-court identifications did not fall within the definition of "hearsay" in Evid.R. 801(C). Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the state contends that the prosecution did not introduce the evidence "to prove the truth of the matter asserted." Specifically, the state contends that it introduced Sheasby's testimony to refute the implication that the prosecution had initially dropped aggravated murder charges against Cox and Granger as part of an arrangement for their testimony. Since the identification of the jacket was the only evidence against Cox, Granger, or defendant, the identification, the state argues, provided an objective, plausible reason for holding defendant and releasing the other two. In other words, the state introduced the testimony to show how the statements affected the prosecution's behavior, not whether the identifications would ultimately prove to be correct.

■ The state's argument is well taken. Since the state apparently did not introduce the statements to prove the truth of the matter asserted, the trial court did not abuse its discretion when it overruled defendant's hearsay objection. See *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus (the admission of relevant evidence is within a trial court's discretion). Moreover, even if we assume that the statements also had some hearsay effect, defendant waived any error by not requesting a limiting instruction. Evid.R. 105 Staff Note, citing *Agler v. Schine Theatrical Co.* (1938), 59 Ohio App. 68, 12 O.O. 371, 17 N.E.2d 118. Furthermore, any error was not prejudicial, since identity was largely undisputed at trial. Defendant had admitted in a statement to the police that he had been with Cox and Granger when they had picked up Nichole. We therefore overrule defendant's second assignment of error.

■ In his fourth assignment of error, defendant argues that Sheasby's testimony regarding the jacket was an improper statement of Sheasby's opinion of the amount or type of evidence against defendant. At trial, defendant objected to the following testimony of Sheasby:

"Q. What happened to the charges that you had filed concerning Lee Granger and Anthony Collins—Anthony Cox? Excuse me.

"A. They were dismissed.

"Q. And what happened with Lee Granger and Anthony Cox?

"A. They were released from the Franklin County jail.

"Q. What was the reason that those charges were dismissed, the charges that you had filed were dismissed?

"A. At that time and point in the investigation, it was determined that there was not enough physical evidence at that point to continue with the charges.

"Q. How about the charges concerning Lewis Collins?

"A. He was still charged and being held in the Franklin County jail. They were not dropped.

"Q. You indicated that there was not enough physical evidence at that point in time concerning Lee Granger and Anthony Cox.

"Was there additional physical evidence, something different between those cases, Anthony Cox and Lee Granger and Floyd Collins?

"Mr. Boda: Objection, Your Honor.

"The Court: Overruled.

"A. The jacket."

In support of his argument, defendant cites Evid.R. 701, which states:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

However, we conclude that the trial court could have found that Sheasby's testimony fell within the range of acceptable lay opinion testimony under Evid.R. 701. The opinion seems to have been rationally based on the witness's perception and helpful in determining the prosecution's motive in dropping the charges against Cox and Granger, as we have previously noted in our discussion of the second assignment of error. In addition, as we have also previously mentioned, the identification testimony did not prejudice defendant; the state, in closing argument at trial, conceded in regard to the jacket that "this was pretty thin evidence against Mr. Collins." In short, we find that the trial court did not prejudicially err when it permitted Sheasby's testimony. We overrule defendant's fourth assignment of error.

Based on the foregoing, we affirm the judgment of the trial court.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

KEEFE, J., concurs separately.

JOHN W. KEEFE, J., retired, of the First Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

KEEFE, Judge, concurring separately.

I am in agreement with Judge Bryant's conclusions, but I prefer to predicate the affirmance of the rape conviction upon the fact that from the criminal scenario which occurred it was reasonable for the jury to infer and to find that Nichole Jones was alive when the defendant-appellant raped her.

The majority opinion suggests that conviction of defendant for the crime of rape could have been had even if Jones were dead at the time. I have a problem with this. A conviction of rape requires proof beyond a reasonable doubt that the victim is compelled to submit to sexual conduct. To be compelled to do some act connotes actions or activity by a perpetrator firmly against the will of the victim. I have difficulty with the idea of a dead person having capability to will, decide, submit, or intend anything.

Whether an unconscious person can be the victim of a rape seems to raise a question not directly before us in this appeal and thus I am not treating that subject.

A striking disparity exists in this state between penalties for the crime of rape, *viz.*, R.C. 2907.02(A)(2), and for abuse of a corpse, R.C. 2927.01. Rape is an aggravated felony of the first degree while abuse of a corpse can be either a misdemeanor of the second degree or a felony of the fourth degree. The wrongdoing is a misdemeanor when "reasonable family sensibilities" only are outraged; the crime is a felony when "reasonable community sensibilities" are outraged.

Given the facts of this incident, it was a mistake not to have provided the jury with a conviction alternative between rape and abuse of a corpse. Probably the indictment should have included counts for both rape and abuse of a corpse. However, I note supererogatorily that the crime of abuse of corpse *might* be a lesser-included offense of rape in a proper case.

As hereinabove stated, I find that the jury did have sufficient evidence to find that the victim was alive at the time of the sexual conduct, and that it is my basis for electing to affirm the rape conviction. Insofar as other portions of Judge Bryant's opinion are concerned, I have no disagreement. I elect to affirm the convictions.