Steffen, C. J.,
concurring in part and dissenting in part:
I concur in all aspects of the majority’s opinion with the exception of that part of the opinion that reverses Doyle’s conviction for sexual assault.
The victim in this case was penetrated by a twig inserted in her rectum. It is unknown whether the penetration occurred prior to or after the victim’s death. What is known, however, is that the penetration occurred as part of the ongoing brutalization of the victim that resulted in her death and the abandonment of her lifeless body.
The majority concludes that a sexual assault may occur only if the victim is alive at the time of penetration. I would agree under circumstances where the penetration of a dead victim does not occur as part of the ongoing criminal violence that resulted in the victim’s death and imminent penetration. In my view, the relevant issue should thus be whether the penetration was accomplished by the perpetrator or perpetrators either during or shortly after the death of the victim. If a stranger happens upon a dead body and subjects the body to sexual penetration, the offense is clearly necrophila. Moreover, if the victim’s killer preserves the body and later has intercourse with it substantially after the act of killing occurred, such intercourse would also constitute an act of necrophilia.
It makes no sense to me that a perpetrator, bent on sexually assaulting his victim, manages to kill her prior to achieving penetration, thereby avoiding prosecution for sexual assault. He has still committed the intended act of penetration against the will and without the consent of the victim. The fact of the victim’s intervening death does not negate the fact that she was taken by force and against her will.
The necrophilia statute, NRS 201.450, was enacted in Nevada as a result of the body of a dead child being stolen from a mortuary and sexually assaulted by the perpetrator, who thereafter deposited the body in a garbage can. See minutes of testimony *904 and discussion before the Assembly Committee on the Judiciary and the Senate Judiciary Committee of the Sixty-Second Session of the Legislature, dated March 16, 1983 and April 5, 1983, respectively. The outrage prompting enactment of the statute was specifically designed to secure the conviction of individuals who seek out dead bodies for their sexual pleasure. The necrophilia statute simply has no place in a situation where, as here, the perpetrator commits the sexual assault shortly after killing the victim. I am especially concerned over the breadth of today’s ruling, because violent offenders who attack their victims with intent of committing sexual assault, but who kill their victims in order to accomplish their objectives, will be entitled to a substantially lesser penalty because of having killed their victims prior to sexually assaulting them.
I fully agree with the supreme courts of the states of Georgia and Tennessee on this subject. In the case of State v. Brobeck, 751 S.W.2d 828 (Tenn. 1988), the court declared:
But assuming that the fact was established that Mrs. Fair was legally dead when penetration occurred, we hold that the Court of Criminal Appeals erred in reversing and dismissing the conviction of aggravated rape.
That Court failed to articulate the basis for its conclusion that the legislature “intended” that the statute apply “only to the living.” There is not a single word or phrase in the statute from which such intent can be derived and there is no ambiguity in the statute that would permit a search beyond its express terms for such intent.
Lipham v. State, 257 Ga. 808, 364 S.E.2d 840 (1988) [,] is one of the few cases from the courts of our sister states that has directly addressed the issue of whether the victim must be alive at the very moment of penetration to commit the crime of rape. In Lipham, the victim’s body was found lying on her bed, nude from the chest down with her legs spread apart. She had a contact gunshot wound on the left side of her head. The court found that there was sufficient evidence to support a finding that defendant had had sexual intercourse with the victim and then addressed the issue raised by defendant that he could not be guilty of rape because the State did not prove that the victim was alive when the rape occurred.
We quote from the opinion of the Supreme Court of Georgia as follows:
The offense of rape is defined in our Code as follows: “A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge is rape occurs when there *905 is any penetration of the female sex organ by the male sex organ.” [Citation omitted.]
There is nothing in this code section which precludes a finding of rape if the victim is not alive at the moment of penetration. What the jury must find is that the defendant had carnal knowledge of the victim “forcibly and against her will.” [Citation omitted.]
We have not heretofore addressed the effect of the use of deadly force to overcome the victim’s resistance in a rape case. . . .
If the element of force is satisfied where the defendant has used less than deadly force to overcome the victim’s resistance so as to allow him to have carnal knowledge of the victim, the element of force is surely no less satisfied when the defendant has used deadly force to accomplish his aim.
As for the remaining element, “against her will” has been interpreted to mean “without her consent,” and has been satisfied in cases in which the victim was drugged, asleep, unconscious, or in a coma. [Citations omitted.] We see no reason why it should be any less applicable in a case in which the defendant has rendered the victim permanently unconscious by killing her.
The facts here differ fundamentally from a case in which one happens upon a corpse of a female and engages in sexual intercourse with it. The use of force in the former and the absence of force in the latter is the difference. One is rape and the other necrophilia .... [Citation omitted.]
The evidence in this case supports the jury’s finding that the defendant had carnal knowledge of Kate Furlow forcibly and against her will notwithstanding that it is unclear whether the defendant first raped the victim and then killed her or first killed the victim and then raped her.
Id. at 842-43.

Id. at 831-32.

Continuing, the Brobeck court also held that:
We are likewise unable to embrace the notion that the fortuitous circumstance, for the rapist, that death may have preceded penetration by an instant, negates commission of the crime of aggravated rape and reduces it to a relatively minor offense associated with erotic attraction to dead bodies. Reading the “live only” requirement into the statute encourages rapists to kill their victims, in our opinion.
*906 Id. at 832. See also Commonwealth v. Waters, 649 N.E.2d 724, 726 (Mass. 1995) (“In the circumstances of one continuous event, it does not matter whether the victim’s death preceded or followed the sexual attack”); State v. Gallegos, 870 P.2d 1097, 1105 (Ariz. 1994), cert. denied, 513 U.S. 934, 115 S. Ct. 330 (1994) (against public policy to allow statute to be construed to allow defendant’s claim that he thought victim was dead before sexually assaulting her, as such a concept would encourage sex offenders to kill their victims before committing sexual offense); State v. Whitsell, 591 N.E.2d 265, 278 (Ohio Ct. App. 1990) (state required to show that victim was alive when series of assaults began, but not required to show victim was alive when sexual assault concluded sequence of events).
I am persuaded that the above reasoning is sound, and that there is no justifiable reason for concluding that when, in the course of assaulting a victim, death ensues prior to penetration, the crime of sexual assault cannot apply.
In the instant case, the victim suffered a twig inserted in her rectum either immediately before or after her death. It was clearly a sexual assault that occurred either during a series of assaults or immediately thereafter. If Doyle were convicted under the inapplicable statute (NRS 201.450 — Sexual Penetration of Dead Human Body — the necrophilia statute), his sentence would allow parole after a minimum of 5 years. On the other hand, Doyle was convicted under the sexual assault statute (NRS 200.366) involving substantial bodily harm. Sentencing options under the latter statute include: (1) life without the possibility of parole; (2) life with possibility of parole, with parole eligibility commencing after minimum of 15 years have been served; and (3) a definite term of 40 years, with eligibility for parole commencing after minimum of 15 years has been served.
As noted, the sentences meted out for sexual assault with substantial bodily harm are all much more severe than the sentencing options under the necrophilia statute. I am at a loss as to why this court, or any court having the option, would provide a defendant who has violently assaulted his victim with the intent of committing sexual assault, with a sentencing windfall under clearly inapplicable necrophilia statute. A “necrophile,” who commits necrophilia, is defined as “[o]ne who has a morbid interest in dead bodies or who has intercourse with corpses.” Taber’s Cyclopedic Medical Dictionary 1102 (15th ed. 1985). The perpetrators in this case, including Doyle, were not necro-philes who had perverted interests in having sexual intercourse with corpses. But the majority, concluding that it could not be demonstrated beyond a reasonable doubt that the victim was still *907 alive when penetration occurred, reverses Doyle’s conviction for sexual assault.
We are thus faced with another judicial ruling that makes no sense. Victims of imminent sexual assault, fighting and resisting to the end, are thus thought to suffer no indignity or outrage because they have succumbed to their attackers’ violence prior to being sexually violated. Because they are dead, their efforts to resist sexual assault, thereby making it clear that it would be accomplished without their consent, do not carry over after death. Having suffered death before the final insult, their cries of resistance, outrage, and fear no longer count. They are no longer “persons” under the majority’s ruling.
I strongly suggest that just as a person’s will speaks in law after death, the cries of a resisting victim of intended sexual assault should also be heard after death. To do otherwise is to deny dignity to the victim while encouraging the perpetrator, who will know that as far as sexual assault is concerned, he should kill his intended victim prior to completing the intended act. And, if the evidence is insufficient to establish beyond a reasonable doubt that the victim was still alive at the time of the sexual assault, the benefit of the doubt is unnecessarily given to the perpetrator by the majority.
Nevada’s sexual assault statute provides that “[a] person who subjects another person to sexual penetration . . . against the victim’s will or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct, is guilty of sexual assault.” NRS 200.366(1) (emphasis added). Moreover, NRS 200.366(2)(a) makes it a category A felony if the perpetrator, “in connection with or as a part of the sexual assault” inflicts substantial bodily harm upon the victim. A brutalized person who is killed immediately preceding the sexual assault remains a victim of substantial bodily harm even more so than many whose lives are not forfeited to the rapist. Under NRS 200.366(3)(a), a person who commits a sexual assault against a child, resulting in substantial bodily harm to a child, is also guilty of a category A felony with heavy penalties. In both cases, the persons who have been killed in the process of accomplishing a sexual assault are still victims, and a lifeless child is still a child. In my judgment, the statute simply does not contemplate that victims who are killed just prior to being sexually assaulted are no longer persons or victims or children within the meaning of the statute, but are transmuted immediately into corpses whose defilement invokes only a penalty for necrophilia — a crime that clearly does not apply.
*908 For the reasons noted above, I concur in all aspects of the majority’s affirmance of Doyle’s convictions, but dissent from both the result and the reasoning of the majority’s reversal of Doyle’s conviction for sexual assault.