## S00A0314. STONE v. THE STATE.
### (529 SE2d 136)

SEARS, Justice.

The appellant, David Stone, appeals from his convictions for felony murder, theft by taking a motor vehicle, and theft by taking.[1] On appeal, he contends that the trial court erred in refusing to permit an attorney who was not a member of the Georgia bar to conduct portions of his trial. Finding no merit to this contention, we affirm Stone's convictions.

Around lunchtime on December 24, 1990, Evelyn Motley and her son, James Motley, visited the victim, Ben Osborne, at his condominium. Ms. Motley testified that at that time, Osborne's residence was relatively neat and that nothing was out of place. Around 6:00 p.m.

---

[1] The crimes occurred on December 24, 1990. Stone was indicted on April 25, 1991. Following a jury trial, Stone was found guilty on August 16, 1991. That same day, the trial court sentenced Stone to life in prison for felony murder, to a concurrent term of 12 months in prison for theft by taking, and to a consecutive 20-year term for automobile theft. The court reporter certified the trial transcript on October 3, 1991, and February 21, 1992. On September 10, 1997, a habeas court granted Stone an out-of-time appeal, and on January 28, 1998, Stone filed a motion for new trial. The trial court held a hearing on Stone's motion for new trial on January 15, 1999, signed an order denying the motion on January 21, 1999, and filed the order on January 29, 1999. Stone filed a notice of appeal on January 22, 1999. The appeal was docketed in this Court on November 12, 1999, and was orally argued on February 22, 2000. "We note that the fact that [Stone's] notice of appeal was prematurely filed does not operate to defeat his right of appeal." *Stewart v. State*, 257 Ga. 211-212, n. 1 (356 SE2d 515) (1987).

on Christmas Day, Evelyn and James Motley went to Osborne's residence to check on him after receiving word he was several hours late for his Christmas Day plans. Finding the door unlocked, the Motleys entered the residence, and found Osborne lying dead on the kitchen floor, with his billfold and credit cards lying nearby. The Motleys called the police, who conducted a search of Osborne's condominium. In Osborne's upstairs bedroom, the police found a gun holster lying on Osborne's bed and a magazine for a gun, which had a .22 caliber bullet sticking out of it, on a chair.

The medical examiner who conducted the autopsy on Osborne testified that Osborne died from a gunshot wound to the chest, and that Osborne also had four bruises on his back and one on his right temple. According to the medical examiner, he recovered a .380 caliber bullet from Osborne's body. He also added that he saw no evidence of gunshot residue on Osborne, and that Osborne was therefore probably shot from a distance of three to four feet.

On December 26, 1990, Stone turned himself in to authorities in Ft. Lauderdale, Florida, and gave a statement. In the statement, Stone admitted that he had met Osborne on Christmas Eve at a bar frequented by male hustlers and prostitutes. After several drinks that evening, Stone agreed to go back to Osborne's condominium. At the condominium, the two men continued drinking, later arguing about the price Osborne was to pay Stone. Stone stated that Osborne asked him to leave, that Stone demanded his money, and that Osborne then went upstairs where the bedrooms were located. Stone added that he was afraid of what Osborne would do, and that he therefore got a poker from the fireplace. According to Stone, Osborne returned with a gun, and Stone hit him twice with the poker. Stone stated that Osborne ran into the kitchen, and that Stone followed him, hitting him once more with the poker. Osborne fell, and Stone got the gun and shot Osborne while he was lying on the floor. Stone added that he took some cash from Osborne, along with a couple of credit cards. He then left Osborne bleeding on the floor and drove Osborne's car to Florida. Stone's fingerprints were found on both a glass and beer can found in Osborne's condominium. Florida authorities recovered from Stone a Beretta .380 semi-automatic pistol, two of Osborne's credit cards, and Osborne's car. Stone's fingerprints were found on the gun, and forensic evidence established that the gun was the murder weapon.

1. Having reviewed the record in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Stone guilty beyond a reasonable doubt of the crimes for which he

was convicted.[2]

2. In his only enumeration of error, Stone contends that the trial court abused its discretion by denying his motion to permit John Rawls, an attorney licensed to practice in Louisiana and Florida, but not in Georgia, to conduct portions of his trial along with his appointed counsel. For the following reasons, we find no merit to this contention.

It is well-settled that Stone did not have a "constitutional right to *demand* that [Rawls] be allowed to represent" him.[3] Whether to permit Rawls to conduct portions of Stone's trial was a decision left to the discretion of the trial court, and this Court will not disturb the exercise of that discretion unless it was abused.[4] Because Stone did not move to have Rawls admitted pro hac vice until the day of trial; because Stone was already represented by a qualified member of the Georgia bar; because the trial court permitted Rawls to advise Stone's appointed counsel during the trial; and because the record shows that Rawls did so, we conclude that the trial court did not abuse its discretion in refusing to permit Rawls to actually conduct portions of the trial.[5]

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 1, 2000.

*Richard O. Allen*, for appellant.

*Patrick H. Head, District Attorney, Russell J. Parker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] (Emphasis in original.) *Lipham v. State*, 257 Ga. 808, 811 (364 SE2d 840) (1988).
[4] Id.
[5] Id.