STATE OF NEBRASKA, APPELLEE, V. JOHN EDWARD RUST, ALSO KNOWN AS JOHN DEWITT, APPELLANT.

250 N. W. 2d 867

Filed February 2, 1977. No. 40451.

Frank B. Morrison, Stanley A. Krieger, David E. Kendall, Peggy C. Davis, and Anthony G. Amsterdam, for appellant.

Paul L. Douglas, Attorney General, and Paul W. Snyder, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

The defendant, John Edward Rust, also known as John DeWitt, was found guilty by a jury of the following charges: (1) The killing of Michael Kellogg in the perpetration or attempt to perpetrate a robbery; (2) maliciously shooting at Russell Wolf with intent to kill, wound, or maim said individual; (3) maliciously shooting at George E. Allen with intent to kill, wound, or maim the said individual; and (4) maliciously shooting at Joseph Nepodal with intent to kill, wound, or maim said individual. He was sentenced by the trial judge on the last three charges to concurrent terms of not less than 16 2/3 and not more than 50 years in the Nebraska Penal and Correctional Complex. In accordance with the provisions of section 29-2520, R. R. S. 1943, a panel of three District Judges, including the judge who presided at the trial, was convened for the purpose of determining the sentence on the murder charge and, after notice and hearing as provided by section 29-2521, R. R. S. 1943, the defendant was sentenced to death for the murder. At the sentencing hearing evidence was adduced by both the State and the defendant. Following the hearing and argument, the sentencing panel made findings in writing in accordance with the provisions of sections 29-2522 and 29-2523, R. R. S. 1943. Automatic review of the death sentence

has come to this court on the murder charge under the provisions of sections 29-2525 and 29-2524, R. R. S. 1943. No appeal has been taken on the other three counts.

Killing in the perpetration of or the attempt to perpetrate a robbery is murder in the first degree and is punishable by death or imprisonment during life. § 28-401, R. R. S. 1943. That statute provides that the punishment shall be determined in the manner provided by sections 29-2520 to 29-2524, R. R. S. 1943.

Defendant is represented by counsel in this court and on his behalf they make the following assignments of error: (1) The death penalty provided by section 28-401, R. R. S. 1943, is unconstitutional in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, sections 3 and 9, of the Bill of Rights, of the Constitution of Nebraska, because such sentences are arbitrarily and capriciously imposed in violation of the mandates of Furman v. Georgia, 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346. (2) Capital punishment constitutes cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the Constitution of the United States and Article I, section 9, of the Bill of Rights, of the Constitution of Nebraska, irrespective of the manner of imposition or how determined. (3) Capital punishment is unconstitutional because a jury determination of the applicability of the aggravating and mitigating factors under sections 29-2522 and 29-2523, R. R. S. 1943, is not mandated by our statute. (4) The panel of sentencing judges misapplied the aggravating and mitigating factors in this case. (5) The statutory definitions of aggravating and mitigating factors under section 29-2523, R. R. S. 1943, are so vague and indefinite as to be unconstitutional. (6) The death sentence is excessive in this particular case. (7) The trial court erred in (a) not separating the jurors during their voir dire examination; (b) in not sequestering the

jury during trial; (c) in denying a request for a continuance; and (d) in denying a request for change of venue.

Assignments (1), (4), and (5) are melded in defendant's argument and all must be covered here even though an assignment comparable to (1) has been covered in State v. Simants, *post,* p. 549, 250 N. W. 2d 881. Assignments (2) and (3) have been adequately dealt with in Simants, and the opinion of the United States Supreme Court in Gregg v. Georgia, 428 U. S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859, fully answers these contentions and they need not be further discussed in this opinion. Determination of the other assignments requires that we briefly summarize the evidence and other pertinent background.

On February 21, 1975, the defendant and two companions, Ronald Raymond Ell and Donald D. Fread, robbed at gunpoint employees of the Hinky Dinky store at 30th and Weber Streets in Omaha, Nebraska. The robbers fled in an automobile. Almost immediately police were alerted and a chase ensued, during which Rust was observed firing at the police cruisers. Two cruisers were struck by the bullets. The cruiser driven by officer Allen was hit by two bullets which passed through the front windshield. Another cruiser driven by officer Nepodal was hit by a bullet which passed through the left rear quarter panel and backseat, and lodged in the right rear door. During the chase the robbers' car became trapped on a residential street when police vehicles blocked both forward progress and retreat.

At that time the robbers' car became stuck in a snowbank. Fread, who was the driver of the get-away car, was shot and killed by the police near the point where the car stopped. Rust and Ell left the car on foot. Police officers Wolf, Allen, and Nepodal, who were the victims named in counts 2, 3, and 4, and others pursued them. Rust continued the fire fight and shot Kellogg,

a civilian who had come to the aid of the police. Officer Wolf was severely wounded by Rust. Officer Allen suffered a slight wound. The evidence showed that Ell hid in some bushes adjacent to a residence and surrendered when ordered to do so. Rust took refuge in a backyard and continued to fire at the officers until he was himself wounded. The evidence, both eyewitness and ballistic, showed that Kellogg was killed by Rust and that the bullet which came from his gun was the one that lodged in the police cruiser driven by Nepodal. Kellogg was shot by Rust four times and he was observed to be shooting into Kellogg's body after Kellogg had fallen as a result of an earlier shot fired by Rust.

The sentencing hearing was held in two stages. At the first stage documentary evidence was introduced, including copies of the record of the trial and a record of Rust's conviction and sentence in 1969 in South Dakota on charges of assault with intent to do great bodily harm and of grand larceny. The conviction arose out of a brutal assault with a tire iron and placing a chain about the victim's neck. Rust served about 5 years of a 10-year term on these two charges and was then paroled. Before the second stage, the trial record was read by the two judges who were not present at trial.

At the second stage of the sentencing hearing, Rust's mother testified on behalf of the defense. The substance of this testimony was to place blame for Rust's antisocial attitude upon events occurring during an unhappy childhood. The mother testified that as a small child Rust suffered from any eye defect and during his early years was rather clumsy. At about the age of 5 he suffered a fall and lost the sight of one eye completely. As a consequence of this accident and his previous eye impairment, he had difficulty in school and was abused by other children. At about age 10 while Rust was still in grade school, a younger brother, who

at the time was under Rust's charge, was struck and killed by an automobile while crossing a street. Apparently Rust's father, to whom young Rust was much attached, admonished him and Rust thereafter blamed himself for his brother's death. Shortly thereafter his father died. Rust had indicated to his mother that he felt responsibility for his father's death as well. Rust dropped out of high school in his junior year. At the time of commitment on the South Dakota charges he was about 18 years of age and on February 1, 1975, his age was apparently approximately 23 years and 6 months.

We first direct our attention to assignments (1), (4), and (5). The defendant argues that the Nebraska death sentence procedure cannot and, in fact, does not eliminate discriminatory, arbitrary, and capricious decisions by judges, and that the result is that the application of the guidelines cannot be sanctioned under the principles established by the Supreme Court of the United States in Furman v. Georgia, *supra*. This argument is founded upon the contention that the definitions of aggravating and mitigating circumstances are vague and indefinite. Defendant points to alleged different and conflicting interpretations made by various District Judges and panels of judges in applying the statutes in the various capital cases now before us as well as in other cases where capital punishment might have been imposed but was not. He makes special reference to the case of Ronald Ell, one of Rust's accomplices, who received only a life sentence. See State v. Ell, 196 Neb. 800, 246 N. W. 2d 594.

As pointed out in Simants, section 29-2522, R. R. S. 1943, provides that after evidence and argument the judge or panel of judges shall fix the sentence either at death or life imprisonment and shall base its determination upon whether the specified aggravating circumstances exist to justify the imposition of the sentence, or whether mitigating circumstances exist which

approach or exceed the weight given to aggravating circumstances. Section 29-2523, R. R. S. 1943, defines eight aggravating circumstances identified by the letters (a) through (h) inclusive and seven mitigating circumstances identified by letters (a) through (g) inclusive.

Aggravating circumstance (a) is as follows: "The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity." § 29-2523, R. R. S. 1943. The sentencing panel found that (a) applied in this case because of the defendant's conviction in South Dakota of the assault with intent to inflict great bodily harm. In State v. Ell, *supra,* the sentencing judge found that aggravating circumstance (a) did not apply. The defendant claims there is an inconsistency in the findings. There is none. The record establishes that Ell had not been convicted of any crime of violence. The record in that case merely showed that he was *wanted* in South Dakota on such a charge. There was in the Ell case no proof of actual guilt. Defendant also notes that the court pointed out in Ell that Ell fired at police officers during an attempt to escape. He claims that this is inconsistent with the findings in the present case. The acts described are clearly terrorizing acts, but they were part of the acts of which Ell was then being tried. We interpret *"substantial history* of serious assaultive or terrorizing criminal activity" to refer to events and incidents prior to and not part of the events out of which the current charge arises. The use of the term "history" clearly implies earlier events. See State v. Holtan, *post,* p. 544, 250 N. W. 2d 876. As so interpreted we believe that the definition of aggravating circumstance (a) is clear. The panel did not misapply that aggravating circumstance in this case, nor in Ell.

The defendant next asserts that the sentencing

judge in State v. Stewart, *ante,* p. 497, 250 N. W. 2d 849, in discussing the first aggravating circumstance, seemed to consider activities which were part of the events charged as "history of serious assaultive or terrorizing activity," because it considered the attempt of Stewart to kill another individual at the time he killed the victim of whose murder he was convicted. Pursuant to the construction of the term "history" adopted in this case and in Holtan, we have this day held in Stewart that aggravating factor (a) was not applicable in that case.

The defendant says that his contention of vagueness of definition and arbitrariness of application as applied to aggravating circumstance (a) is supported by inconsistent interpretations and contrary applications by the sentencing judge in Simants and the sentencing panel in Holtan. Whatever merit this contention may have had has now been removed by our opinions in those cases and in this one. In Simants we have today upheld the finding of the sentencing judge that aggravating circumstance (a) did not exist. In that case the sentencing court applied the construction which we have here approved, that is, that activities associated with the crime in which sentence is being imposed is not "history." Today in Holtan we have eliminated consideration of the associated offense of shooting with intent to kill, wound, or maim which occurred in connection with the murder. There existed, however, in Holtan previous convictions of crime involving violence and threats of violence to persons and so, as the opinion in Holtan points out, the finding of the panel was supported by the evidence.

In this case the panel found that aggravating circumstance (b) did exist, that is, "The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime." § 29-2523, R. R. S. 1943. In the case before us the robbers were masked, they were ap-

parent strangers in the neighborhood, and the murder was part of the attempt to escape and so part of the effort to conceal their identity. The finding of the panel on circumstance (b) was correct. However, we think that the panel was wrong in finding that the murder was committed to conceal the commission of another crime. The murder could not have concealed the commission of the crime or of the assaults because it did not destroy or was not an attempt to destroy evidence of those crimes. Their discovery could not have possibly been prevented by the murder of Kellogg. The other crimes were, in fact, already known. We hold that a murder is committed to conceal the commission of another crime when its purpose is to hide the fact that another crime has been committed as, for example, in a case where murder by arson is committed in an effort to conceal the evidence of commission of another crime, e.g., another murder or burglary, or where the murder of a witness is likely to prevent the discovery of a prior crime not otherwise likely to be discovered.

In this case the panel found that aggravating circumstance (c) did not exist. That is, that the murder was not committed for hire, or for pecuniary gain, nor had the defendant hired another to commit the murder for the defendant. The panel properly applied this criteria and its finding was correct. The defendant argues, however, that in Stewart the sentencing judge applied an interpretation of the definition which is inconsistent with that applied in this case. That is, it determined that since part of the motivation for the crime was to avoid having to pay for a quantity of marijuana, aggravating circumstance (c) existed. This contention is answered by our finding today in Stewart that this aggravating circumstance did not exist in that case. We construe this factor to apply (1) to the hired gun, (2) to the hirers of the gun, and (3) to murder motivated primarily by a desire for pecuniary gain as in the case

of a murder of an insured by the beneficiary of a life insurance policy for the purpose of obtaining the proceeds, or the murder of a testator by a legatee or devisee to secure a legacy or a devise. Where, as here, the murder was committed as part of an attempt to escape or to conceal the identity of the perpetrator, we do not consider the murder was committed for a pecuniary gain even though the result could possibly have been to enable Rust to keep the proceeds of the robbery. We think it is not reasonable to construe the definitions in such a manner as to make them overlap and make the same identical facts constitute two aggravating circumstances.

We believe the Legislature intended by each definition to convey a different concept, at least to the extent that some added different and important element, e.g., motive or purpose, is included in each separate definition even though some fact or facts in a particular case may pertain to more than one of the definitions, e.g., pecuniary gain may be the result. This principle is also illustrated by our holding in Simants where the multiple murders satisfy aggravating circumstance (e), but are not construed to also include circumstance (f), i.e., "created a great risk of death to at least several persons."

In this case the court found that aggravating factor (d) did not exist. That factor is: "The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence." The sentencing panel in its findings stated: "We recognize that all first degree murder crimes are capable of being accurately characterized by one or more of the descriptive adjectives employed, but by the use of the words 'especially' and 'exceptional' the legislature has required a much greater degree of these characteristics than is usually present in a murder. This category of aggravating circumstances would include murders involving torture, sadism, sexual

abuse, or the imposition of extreme suffering. Here the murder was effected by three bullets causing almost instantaneous death and the imposition of extreme suffering on the victim was not involved. It is a close question as to whether this particular aggravating circumstance exists. In view of our foregoing interpretation of the application of this aggravating circumstance, we find this aggravating circumstance does not exist." We think the panel properly interpreted and applied the definition in this case. See Proffitt v. Florida, 428 U. S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913, where the United States Supreme Court approved a similar construction of substantially the same guideline by the Supreme Court of Florida and said: "We cannot say that the provision, as so construed, provides inadequate guidance to those charged with the duty of recommending or imposing sentences in capital cases." The defendant argues, however, that the sentencing court in Stewart applied a contrary interpretation and made finding inconsistent with the interpretation. In Stewart, death was instantaneous by reason of a gunshot wound to the head. The circumstances surrounding the murder were gruesome, that is, the attempt to burn the body of the victim as well as of an unconscious person who recovered consciousness and escaped. Had the attempt to commit the second murder in Stewart succeeded and the victim died an agonizing death by burning, then no doubt as to the second murder a finding that circumstance (d) existed would have been supportable. Circumstance (d) by its literal terms applies only to the murder actually committed and we so construe it.

Today in Holtan we have also said that aggravating circumstance (d) exists where the murder is so coldly calculated as to indicate a state of mind totally and senselessly bereft of regard for human life.

The panel found that aggravating circumstance (e) did not exist. That circumstance is: "At the time the

murder was committed, the offender also committed another murder." § 29-2523, R. R. S. 1943. The finding was proper. The standard is unambiguous and needs no construction. The defendant argues, however, that the sentencing judge in Stewart construes circumstance (e) to pertain to *attempts* to murder committed at the same time as the murder for which the sentence was imposed. We agree such a construction is improper. We have this day set aside the death sentence in Stewart and in so doing pointed out that the trial court misconstrued aggravating circumstance (e) in that case.

The defendant also argues that the imposition of the death sentence in his case is arbitrary and discriminatory because in State v. Ell, *supra,* only a life sentence was imposed, yet Ell was, as an aider and abettor, guilty not only of the murder of Kellogg, but also of the murder of Fread, his accomplice, who was killed by the police. The defendant apparently relies upon a rule which we find in an opinion of the Supreme Court of Pennsylvania, Commonwealth v. Thomas, 382 Pa. 639, 117 A. 2d 204, where it was held that a participant in a robbery was accountable for felony murder in the death of an accomplice shot by the victim of the robbery during the escape. There are at least two responses to this contention. (1) This court has never adopted any such theory of felony murder and it is not likely to. Such a theory would constitute an extension of the statute and no act is a crime in Nebraska unless made so by statute. (2) The Supreme Court of Pennsylvania has since disapproved its previous holding. Commonwealth v. Redline, 391 Pa. 486, 137 A. 2d 472. It appears that only one state follows any such theory. Taylor v. Superior Court, 91 Cal. Rptr. 275, 477 P. 2d 131.

Additionally in State v. Ell, *supra,* there existed another mitigating factor. Ell, after leaving the auto, abandoned the fight and surrendered when ordered to

do so. He was guilty of the murder of Kellogg only as an aider and abettor. He did not actually kill anyone. Although he was equally guilty with Rust in the robbery, his participation in the actual killing was relatively minor. See mitigating factor (e), § 29-2523, R. R. S. 1943.

The sentencing panel found that aggravating circumstance (f) did exist. That circumstance is: "The offender knowingly created a great risk of death to at least several persons." § 29-2523, R. R. S. 1943. As the previously recited facts show, this finding was proper. The defendant shot at at least three police officers, wounding two of them. Further elaboration is not required. See our construction of definition (f) in State v. Simants, *supra*. The defendant's argument founded upon an inconsistent interpretation of (f) in State v. Stewart, *supra*, has been dealt with in our opinion in that case.

The sentencing panel found that aggravating circumstance (g) did not exist. Circumstance (g) is: "The victim was a law enforcement officer or a public servant having custody of the offender or another." § 29-2523, R. R. S. 1943. The victim Kellogg was not a police officer. The language is unambiguous. It requires no construction or interpretation.

The panel found that circumstance (h) did exist. That definition is: "The crime was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws." § 29-2523, R. R. S. 1943. As the sentencing panel pointed out in its findings, the murder of Kellogg was committed in an attempt to avoid capture and this was part of an attempt to prevent the apprehension and arrest by law enforcement officers of the defendant and his companion Ell. It is the fact that the murder of Kellogg was a part of the defendant's resistance to his capture and arrest which makes circumstance (h) applicable in this case. Such an act, in our judgment, clearly comes with-

in the definition of aggravating circumstance (h). Defendant points out, however, that the sentencing judge in Stewart construed the murder alone as an attempt to conceal the crime, thus satisfying definition (h). We have this day dealt with that matter in the Stewart opinion and need not mention it again here.

We now turn to a consideration of the defendant's contentions with reference to the findings by the panel on the mitigating factors. The panel found that mitigating circumstances (a), (b), (d), (e), (f), and (g) did not exist. The defendant does not challenge these findings.

The panel did find that mitigating circumstance (c) did exist, that is, "The crime was committed while the offender was under the influence of extreme mental or emotional disturbance." § 29-2523, R. R. S. 1943. In this connection the panel pointed out that events of the defendant's childhood had contributed to a basic emotional instability in the defendant; that at the time of the murder of Kellogg the defendant was cornered and trapped and had been shot at by Kellogg; and that the defendant's basic emotional instability and the existing circumstances made the crime one of strong emotion and not one of cold calculation. The evidence supports such a fact finding.

The defendant argues, however, that the definition of mitigating circumstances is subject to the same indefiniteness which he claims for the aggravating factors and he bolsters his argument insofar as it pertains to circumstance (d), the age of the defendant, by pointing out that in Stewart the sentencing judge imposed the death penalty and that in State v. McDonald, 195 Neb. 625, 240 N. W. 2d 8, involving a similar crime, the defendant received life imprisonment. In one case sentencing authority found age was a mitigating factor and in the other case it found that it was not. In this case the defendant was fully matured and 23 years of age. Any force that the defendant's argument has with

reference to the Stewart and McDonald cases has this day been removed by our reducing the sentence in Stewart to life imprisonment and our finding that age was a mitigating factor in that case.

We fully agree with the sentencing panel that the existing aggravating factors in this case clearly outweigh any mitigating factor. We further conclude that the death penalty under the facts in this case is not excessive and is not disproportionate to that imposed in the other cases before us.

We now turn to the defendant's last assignment relating to the overruling of various motions. Rust and his accomplice Ell were tried together in the District Court. Substantially the same motions were made by both defendants. The record applicable to these motions as to both defendants is the same identical record. There was no difference in the facts as to either defendant. These motions were thoroughly considered and determined in Ell. The result must be the same in this case. Defendant's last assignment is not meritorious.

We have today held in Simants, in response to a constitutional challenge, that the facts upon which the applicability of an aggravating factor depends must be proved beyond a reasonable doubt. We are satisfied from our review of the evidence in this case that the facts upon which the finding of the existence of each aggravating factor depends was proved beyond a reasonable doubt and so find. In making such finding we have applied the same standard of reasonable doubt as applicable to the burden of proof in criminal cases. NJI No. 14.08. See, State v. Rice, 188 Neb. 728, 751, 199 N. W. 2d 480; Chapman v. California, 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, 24 A. L. R. 3d 1065.

AFFIRMED.