## S97A0445. SIMPKINS v. THE STATE.
(486 SE2d 833)

PER CURIAM.

A jury convicted Chester Simpkins of murder and armed robbery in the shooting death of Beverly Williford. The State sought the death penalty, but Simpkins received life without parole. Simpkins appeals.[1]

The evidence at trial showed that Simpkins and Levon Burch entered the Crack Shot pawn shop with plans to rob the store. Williford was working in the store at the time. Burch entered the store first and pretended to be a customer. While Williford was helping Burch, Simpkins entered the store with his gun raised and leaned across the counter and shot Williford in the head, killing him. The two then stole several items and fled the area on foot. The police

---

[1] The crimes were committed on April 24, 1994 and May 18, 1994. A grand jury indicted Simpkins on May 24, 1994 and on July 14, 1994 the State served its notice of intent to seek the death penalty. After a trial on November 6-17, 1995, the jury found Simpkins guilty of malice murder, felony murder, armed robbery, burglary, aggravated assault, two counts of possession of a firearm during the commission of certain crimes, and three counts of possession of a firearm by a convicted felon. At the sentencing hearing, the jury was unable to reach a unanimous verdict. Two jurors voted for life with parole, eight jurors for life without parole, and two jurors for death. The trial judge then found the existence of two statutory aggravating circumstances and sentenced him to life without parole for malice murder, life imprisonment for armed robbery, twenty years for burglary, twenty years for aggravated assault, five years each for two counts of possession of a firearm during the commission of a crime, five years for possession of a firearm by a convicted felon with all sentences to run consecutively. Simpkins filed a motion for new trial on December 21, 1995, which he amended on June 25, 1996. The trial court denied the motion on November 4, 1996. Simpkins filed his notice of appeal on November 7, 1996, which was docketed in this Court on December 10, 1996, and oral argument was held on March 10, 1997.

arrested Simpkins a short distance away while he was making a phone call. The evidence also showed that Simpkins and Burch had previously broken into the pawn shop on April 24, 1994 and stolen jewelry and several guns, one of which Simpkins used to kill Williford.

1. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Simpkins guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In its jury charge at the sentencing phase, the trial court gave instructions on murder committed during an armed robbery as an aggravating circumstance under OCGA § 17-10-30 (b) (2) and also on murder committed for pecuniary gain as an aggravating circumstance under OCGA § 17-10-30 (b) (4). Simpkins urges that giving this charge on both aggravating circumstances was redundant under the facts of the case and unfairly prejudicial.

Subsections (b) (2) and (b) (4) of OCGA § 17-10-30 refer to separate and distinct aggravating circumstances. "The (b) (2) circumstances refer to the manner in which the victim was killed, and the (b) (4), the motive for killing." *McClain v. State*, 267 Ga. 378, 387 (7) (477 SE2d 814) (1996). Here, the "motive" for the murder clearly was pecuniary gain and subsection (b) (4) was, therefore, applicable. Although Simpkins did kill for pecuniary gain, the "manner" in which he did so was by use of a firearm. Thus, he did not commit the murder for pecuniary gain during the commission of a non-capital crime, such as robbery. Rather, Simpkins committed the murder during the commission of an armed robbery, which is itself another capital crime. It follows that subsection (b) (2) was, therefore, also an applicable aggravating circumstance under the facts of the case.

It has long been recognized that the use of a firearm in the commission of a crime is itself a separate crime which warrants separate punishment. OCGA § 16-11-106; *Wiley v. State*, 250 Ga. 343, 351 (6) (296 SE2d 714) (1982). Also, the use of a firearm to commit a murder for pecuniary gain is an aggravating circumstance which warrants separate consideration. Since not all murders involve the contemporaneous commission of an armed robbery, "the § (b) (2) aggravating circumstance establishes a 'second plane,' separating 'from all murder cases those in which the penalty of death is a possible punishment.' [Cits.]" *Ford v. State*, 257 Ga. 461, 463 (1) (360 SE2d 258) (1987). The "armed robbery" aggravating circumstance may overlap the "pecuniary gain" aggravating circumstance, but "[a]ggravating circumstances are not invalid simply because they might overlap to some extent. [Cits.]" *McClain v. State*, supra at 387 (7). The State was not precluded from urging both aggravating circumstances

simply because pecuniary gain was a factor in both. See *Tharpe v. State*, 262 Ga. 110, 114 (17) (416 SE2d 78) (1992); *Lonchar v. State*, 258 Ga. 447, 453 (6) (369 SE2d 749) (1988); *Parks v. State*, 254 Ga. 403, 416 (16) (330 SE2d 686) (1985).

*Willie v. State*, 585 S2d 660 (Miss. 1991); *State v. Quesinberry*, 354 SE2d 446 (N.C. 1987); *People v. Bigelow*, 691 P2d 994 (Cal. 1984); *Cook v. State*, 369 S2d 1251 (Ala. 1978); *State v. Rust*, 250 NW2d 867 (Neb. 1977) and *Provence v. State*, 337 S2d 783 (Fla. 1976) do not constitute authority for a contrary holding. The applicable statute in each of those states provides that the commission of a murder during the course of a "robbery" and commission of a murder for "pecuniary gain" are separate aggravating circumstances. Because every "robbery" necessarily involves "pecuniary gain," those two aggravating circumstances are redundant unless "pecuniary gain" is defined so as to exclude "robbery." In contrast to the statutes in those other states, the applicable statute in Georgia provides that the commission of a murder during the course of another "capital felony," such as an *armed* robbery, and commission of a murder for "pecuniary gain" are separate aggravating circumstances. Thus, in Georgia, unlike in those other states, a defendant who murders for "pecuniary gain" during the course of a "robbery" has *not* committed two statutory aggravating circumstances, but only the one "pecuniary gain" aggravating circumstance. In Georgia, only a defendant, such as Simpkins, who murders for "pecuniary gain" during the commission of an "armed robbery" has committed two statutory aggravating circumstances. Clearly, there is no redundancy, since Simpkins not only committed the murder for "pecuniary gain" by robbing the victim, but he used a firearm to do so and, thus, committed the additional capital offense of "armed robbery." The "pecuniary gain" aggravating circumstance relates to Simpkins' "motive" for the murder, whereas the "armed robbery" aggravating circumstances relates to the "manner" in which he committed the murder for "pecuniary gain." *McClain v. State*, supra at 387 (7). Simpkins committed murder while robbing and he murdered while robbing with a firearm.

Moreover, it appears that Mississippi, North Carolina, California, Alabama, Nebraska and Florida either are "weighing" states or were at the time the above-cited cases were decided. In a "weighing" state, after the jurors have found the existence of at least one aggravating circumstance, they must then weigh the aggravating circumstance or circumstances against the mitigating circumstances. *Zant v. Stephens*, 462 U. S. 862, 873 (I), fn. 12 (103 SC 2733, 77 LE2d 235) (1983). Georgia is not, however, such a "weighing" state. In this state, unlike in the "weighing" states, the jury receives no instructions to give special weight to any aggravating circumstance, to consider multiple aggravating circumstances any more significant than a

single such circumstance, or to balance the aggravating and mitigating circumstances pursuant to any special standard.

> Thus, in Georgia, the finding of an aggravated circumstance does not play any role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty.

*Zant v. Stephens*, supra at 874 (I). Thus the decisions from "weighing" states, wherein the existence of multiple aggravating circumstances is a determining factor to be balanced against the mitigating circumstances, have no precedential value in a "non-weighing" state, such as Georgia, in which the existence of multiple aggravating circumstances is not involved in the determination of whether a defendant who has been found eligible for the death penalty should receive that sentence. See *Stringer v. Black*, 503 U. S. 222, 229-230 (II) (B) (1) (112 SC 1130, 117 LE2d 367) (1992).

> In this state, juries are not required to balance aggravating circumstances against mitigating circumstances. Rather, the death sentence may be considered only if the [S]tate establishes beyond a reasonable doubt at least one of the statutory aggravating circumstances set forth in OCGA § 17-10-30, and if such a circumstance is established, the jury nonetheless "may withhold the death penalty for any reason, or without any reason." [Cits.]

*Ford v. State*, supra at 464 (2).

Consistent with the law of Georgia as a "non-weighing" state, the trial court in this case did not charge that the existence of multiple aggravating circumstances was a factor to be balanced against the mitigating circumstances. Pursuant to the trial court's charge, the jury was instructed only to consider the existence of one or more aggravating circumstances in determining Simpkins' eligibility for the death penalty.

> [U]nder the Georgia scheme, " '(I)n making the decision as to the penalty, the factfinder takes into consideration all circumstances before it from both the guilt-innocence and the sentence phases of the trial. These circumstances relate both to the offense and the defendant.' " [Cit.]

*Stringer v. Black*, supra at 230 (II) (A) (1). Because the evidence authorized a finding of the two overlapping, but separate, aggravating circumstances of Simpkins' commission of the murder while rob-

bing the victim with a firearm, there was no error.

3. Simpkins also challenges the introduction of victim impact evidence during the sentencing phase. The three witnesses who testified read short, prepared statements in response to the prosecutor's questions. The questions and answers had been previously given to defense counsel. In the prepared statements, each witness described the impact the victim's death had on him or her personally and also provided a brief "glimpse into the life" of the victim. A witness's testimony regarding the personal impact of the death on him is permissible so long as the testimony does not cross the line to a highly emotional and inflammatory appeal to the jury's passions and prejudices. *Turner v. State*, 268 Ga. 213 (486 SE2d 839) (1997); *Livingston v. State*, 264 Ga. 402, 404 (444 SE2d 748) (1994). After a review of the record, we conclude that the testimony in this case did not cross that line.

In seeking a "glimpse into the life" of the victim, the State asked the witness to describe the victim's "personal life, family life, employment, recreation, church, et cetera." Such basic, factual evidence about the victim is admissible as victim impact evidence so long as it does not encourage the jury to impose the death penalty based on the victim's class or wealth and so long as it does not inflame or unduly prejudice the jury. The "glimpse of the life" evidence in this case was just three pages of transcript and it focused on the victim's work and family relationships. We conclude that these brief statements were not unduly prejudicial and find no error in their admission.

*Judgment affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who concur specially.*

FLETCHER, Presiding Justice, concurring specially.

At the sentencing hearing, the trial court instructed the jury on the statutory aggravated circumstances of murder committed during an armed robbery under OCGA § 17-10-30 (b) (2) and murder committed for pecuniary gain under OCGA § 17-10-30 (b) (4). I would hold that this charge was error because (b) (2) and (b) (4) are redundant under the facts of this case and have the potential to unfairly prejudice Simpkins because a jury that finds two statutory aggravating circumstances may be more likely to impose a harsher sentence. Nevertheless, I concur with the affirmance because the jury did not return a death sentence and the trial court sentenced him to life without parole.

This Court has previously held that where separate aggravating circumstances merely "overlap," the trial court may instruct the jury

on both.[2] The situation this Court has not addressed directly is whether statutory aggravating circumstances that refer to identical aspects of the crime may both be charged. The majority insists that these aggravating circumstances are different and relies primarily on the cursory statement in *McClain v. State*[3] that "(b) (2) circumstances refer to the manner in which the victim was killed, and the (b) (4), the motive for the killing." After further research and consideration, it is apparent that this distinction is neither sound nor accurate. The (b) (2) circumstance covers murder during the commission of another capital felony[4] and thus applies to rape and kidnapping as well as armed robbery. It does not address the "manner in which the victim was killed" as that phrase is commonly understood. When the manner in which the victim is killed is a relevant circumstance warranting enhanced punishment, another circumstance more likely applies.[5] The (b) (4) circumstance applies to situations in which a desire for pecuniary gain was the motive for the murder. Thus, a murder-for-hire or a murder to gain insurance proceeds would fall under (b) (4).

The vast majority of courts that have considered this issue have concluded that where pecuniary motive is in fact the motive for the robbery, it is improper to charge both murder committed during a robbery and murder for pecuniary gain as statutory aggravating circumstances.[6] In each of these foreign decisions, the defendant used an offensive weapon to rob and kill the victim; thus, the majority's reliance on the difference between robbery and armed robbery to distinguish these cases is meaningless. Furthermore, in Georgia, a robbery in which the perpetrator kills the victim will warrant a conviction for armed robbery.[7] Finally, the requirement that these other states "weigh" aggravating and mitigating circumstances does not

---

[2] *Thornton v. State*, 264 Ga. 563, 578 (449 SE2d 98) (1994).

[3] 267 Ga. 378, 387 (477 SE2d 814) (1996).

[4] Subsection (b) (2) also applies when the murder is committed while the defendant was engaged in aggravated battery or burglary or arson in the first degree.

[5] OCGA § 17-10-30 (b) (7) (murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery).

[6] See *Provence v. State*, 337 S2d 783, 786 (Fla. 1976), cert. denied, 431 U. S. 969 (97 SC 2929, 53 LE2d 1065) (1977); *Cook v. State*, 369 S2d 1251, 1256 (Ala. 1978) (decided under Alabama's former death penalty law); *Willie v. State*, 585 S2d 660, 680-681 (Miss. 1991); *State v. Quesinberry*, 354 SE2d 446, 452-453 (N.C. 1987); *People v. Bigelow*, 691 P2d 994, 1005-1006 (Cal. 1984). See also *State v. Rust*, 250 NW2d 867, 874 (Neb. 1977) (it is "not reasonable to construe the [murder for pecuniary gain and murder to conceal identity of perpetrator] definitions in such a manner as to . . . make the same identical facts constitute two aggravating circumstances").

[7] *Lipham v. State*, 257 Ga. 808, 810 (364 SE2d 840), cert. denied, 488 U. S. 873 (109 SC 191, 102 LE2d 160) (1988) (where victim is killed with gun, jury may infer from the evidence that the defendant committed armed robbery whether the victim was shot before or after the taking).

affect the substantive analysis of whether charging separate aggravating circumstances for identical aspects of a crime is logical or fair. Rather, the fact that Georgia is not a "weighing" state affects only the potential harm of any error.

Under the facts of this case, the motives for the crimes were the same whether considered under (b) (2) as a murder committed during an armed robbery or under (b) (4) as a murder committed for pecuniary gain. Under both circumstances, the motive for the robbery was pecuniary gain and the motive for the killing was to eliminate a witness to the robbery. Because (b) (2) and (b) (4) refer to identical aspects of the crime in this case, it is irrational to charge separate aggravating circumstances. Therefore, I would adopt the majority position that a murder committed during the offense of armed robbery constitutes only one aggravating circumstance.

Even though I would conclude that the trial court's charge on both (b) (2) and (b) (4) was error, I agree that it does not require reversal. Simpkins received life without parole and not the death penalty and, therefore, the unique concerns for reliability in sentencing are not present.[8] Additionally, the trial court sentenced Simpkins after the jury could not reach a unanimous decision and there is less concern that the trial court would be improperly influenced by the mere number of aggravating circumstances.

I am authorized to state that Chief Justice Benham joins in this special concurrence.

SEARS, Justice, concurring specially.

Although I concur in the result of the majority opinion, I write to fully explain my reasons. In Georgia, an aggravating circumstance " 'must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' "[9] For this reason, I conclude that when two aggravating circumstances are alleged by the state, but they in fact only illuminate *one* reason for selecting the defendant's case as a case eligible for the death penalty, such so-called "double-counting" is improper. Moreover, because I further conclude that the aggravating circumstances at issue in this case do not merely duplicate a single reason for distinguishing Simpkins' conduct from that of defendants who do not receive the death penalty, but instead serve to elucidate two separate

---

[8] Compare *Woodson v. North Carolina*, 428 U. S. 280, 303-305 (96 SC 2978, 49 LE2d 944) (1976). ("[D]eath is a punishment different from all other sanctions in kind rather than degree" so that "there is a . . . difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.")

[9] *Zant v. Stephens*, 462 U. S. 862, 877 (103 SC 2733, 77 LE2d 235) (1983); *Lowenfield v. Phelps*, 484 U. S. 231, 244 (108 SC 546, 98 LE2d 568) (1988).

reasons for justifying the imposition of a more severe sentence on Simpkins, I find no improper double-counting of aggravating circumstances and therefore concur in the majority opinion.[10]

In this regard, the facts of the murder and armed robbery committed by Simpkins would authorize a jury to find that Simpkins was willing to commit a capital felony, armed robbery, that involved the prospect of violence to a person, and that he was then willing to eliminate the witness to that offense. OCGA § 17-10-30 (b) (2).[11] These considerations are, I believe, what this Court meant in *McClain v. State*[12] in describing the (b) (2) aggravating circumstance as relating to the "manner in which the victim was killed."[13] Second, the facts of the murder and armed robbery would authorize a jury to find that Simpkins was willing to commit murder for pecuniary gain. OCGA § 17-10-30 (b) (4). Although the evidence probably will authorize a jury to find these two aggravating factors in the vast majority of armed robbery-murder cases, and although these aggravating factors arise from the same conduct in this case, the aggravating circumstances reveal different characteristics of the defendant and his crimes, and each aggravating circumstance genuinely serves to narrow the class of defendants eligible for the death penalty.[14]

DECIDED JULY 14, 1997.

*Garrett & Gilliard, Michael C. Garrett, Melissa S. Padgett,* for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Beth Attaway, Assistant Attorney General,* for appellee.

---

[10] See generally *Henderson v. Dugger*, 925 F2d 1309, 1319 (11th Cir. 1991) (holding that, in Florida, there is no impermissible double-counting of aggravating circumstances when "the same facts . . . reveal different characteristics of the crime").

[11] See *Gregg v. Georgia*, 428 U. S. 153, 221, n. 10, 224 (96 SC 2909, 49 LE2d 859) (1976).

[12] 267 Ga. 378, 387 (7) (477 SE2d 814) (1996).

[13] Id.

[14] Further, I can discern no reason why a jury would not be authorized to find that a defendant acted with dual motives in committing a crime, here monetary gain and the elimination of a witness. Moreover, each of these motives serves independently to justify the imposition of the death penalty.