## S97A0424. TURNER v. THE STATE.
### (486 SE2d 839)

FLETCHER, Presiding Justice.

A jury convicted Marvin Turner of malice murder, felony murder, aggravated assault, aggravated assault with a deadly weapon, false imprisonment, and possession of a firearm in the commission of a crime in the shooting death of Cleophus Ammons.[1] The state sought the death penalty, but the jury returned a sentence of life without parole. On appeal, Turner challenges the admission of victim impact evidence and raises seven additional enumerations of error. Because the victim impact evidence was not highly inflammatory, and the other issues contain no error requiring reversal, we affirm.

The evidence at trial showed that Turner, Marcus Crowder and Martin Boyer decided to rob the Super Valu Grocery Store in Clarkston. After one failed attempt at kidnapping Ammons, who was the store manager, they arranged for Turner's girl friend to lure Ammons to a place where he could be ambushed and kidnapped. They kid-

---

[1] The crimes occurred August 21, 1994. A grand jury indicted Turner on December 8, 1994 and on December 30, 1994 the state served its notice of intent to seek the death penalty. The jury returned its guilty verdicts on May 21, 1996 and fixed the penalty at life without parole. On May 23, 1996, the trial court merged the felony murder count and both aggravated assault counts into the malice murder count and sentenced Turner to life without parole, to a ten-year consecutive term for the false imprisonment count, and to a five-year consecutive term for the possession of a firearm count. Turner filed his motion for new trial on June 14, 1996, and amended it on September 26, 1996. The trial court denied the motion on October 8, 1996. Turner filed his notice of appeal on November 7, 1996. The appeal was docketed in this Court on December 6, 1996 and oral argument was held on April 15, 1997.

napped him and took him to Turner's apartment where they beat him and tortured him. They demanded that he give them the security code and safe combination, which Ammons did. While Crowder held Ammons at the apartment, Turner and Boyer went to the store, but were unable to open the safe. Upon the return to the apartment, Turner and Crowder decided to kill Ammons. They called Darian Tant, whom they knew would lead them to a place to dispose of the body. Turner, Crowder, and Tant drove Ammons to a deserted cemetery in Rockdale County. Crowder shot Ammons in the back of the head, then Tant and Turner also shot him.

1. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Turner guilty of the crimes charged beyond a reasonable doubt.[2]

2. Turner challenges the admission of victim-impact evidence during the sentencing phase. In *Livingston v. State*,[3] we considered the constitutionality of OCGA § 17-10-1.2, Georgia's victim impact statute. This Court upheld its constitutionality after considering the rationale for the admission of victim impact evidence and noting the safeguards imposed by the legislature.[4] Because *Livingston* was an interim appeal, the court did not have an opportunity to consider the procedures under which victim impact evidence should be presented and considered. Now with the benefit of a full record in this and other cases, we take this opportunity to provide guidance in the use of victim impact evidence.

(a) In this case, the state presented two witnesses to give victim impact testimony: the victim's mother and sister. Both witnesses prepared a written statement to answer the question "what emotional impact has the murder of Cleo Ammons had on you as his [mother/ sister]?" Prior to trial, the state provided the statements to Turner and the court held a hearing, in which Turner had an opportunity to challenge the content of the statements to remove language that might inflame passion or prejudice. Some changes to the statements were made during the hearing. At trial the state asked each witness her name and then the above-quoted question. Each witness read her brief statement and was then available for cross-examination.[5]

The procedure used by the state and trial court in this case has much to commend it. It enables the jury to hear the evidence allow-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] 264 Ga. 402 (444 SE2d 748) (1994).

[4] Id. at 403, n. 3, 404.

[5] The record in *Simpkins v. State*, 268 Ga. 219 (486 SE2d 833) (1997), reflects that this procedure was developed out of the district attorney's office in Cobb County in consultation with then Judge P. Harris Hines, and that it is followed in many judicial circuits.

able under OCGA § 17-10-1.2, but also ensures that evidence that might be unduly prejudicial is not admitted. By providing a copy of the statement to the defense and the court before the sentencing phase, the trial court may ensure that the statement does not contain highly inflammatory statements. Because the witness is reading a prepared statement, the witness is less likely to lose control and inadvertently offer highly emotional and potentially prejudicial testimony. Although *Livingston*[6] and OCGA § 17-10-1.2 (b) (6) suggest that the court question the witness, the better practice is for the state to call and question the witness.[7] This avoids the possibility that the jury might give greater weight to the "court's witness." After review of the record and the statute, we conclude that this procedure best comports with the statute and minimizes undue prejudice and we approve its use in future cases.

(b) We have reviewed the statements given by both victim impact witnesses. Both statements were very brief, covering less than two pages of transcript each, and focused on the witnesses' relationship with the victim and how the victim's death had affected the witness personally.[8] Neither statement focused on the victim's social status[9] and neither provided a "detailed narration of . . . emotional and economic sufferings of the victim's family."[10]

Both statements did include references to religion. This Court has held that the death penalty may not be imposed due to passion engendered by religious principles and beliefs.[11] The references to religion in the witnesses' statements did not cross the line of inflaming the jury's emotions based on religion. Rather, the references to religion were extremely brief, one witness stating that the victim had a "new found faith and spirituality" and the other stating that the victim was a "dedicated member of his church family." These single, abbreviated references cannot be taken as engendering that passion and prejudice proscribed by the due process clause of the state and federal constitutions.

Turner did not request and the court did not instruct the jury regarding the victim impact statements. Because of the importance of the jury's decision in the sentencing phase of a death penalty trial, it is imperative that the jury be guided by proper legal principles in reaching its decision. Additionally, we note that other states require that the jury be instructed on the purpose of victim impact evi-

---

[6] 264 Ga. at 405.

[7] *McClain v. State*, 267 Ga. 378, 388 (477 SE2d 814) (1996).

[8] Compare id. at 387-388 (testimony regarding anger in community about increasing crime in general is impermissible victim impact evidence).

[9] *Livingston*, 264 Ga. at 404.

[10] Id. at 417 (Benham, J., dissenting).

[11] *Livingston*, 264 Ga. at 404; *Horton v. State*, 249 Ga. 871, 874 (295 SE2d 281) (1982).

dence.[12] Therefore, in future cases in which victim impact evidence is given in the sentencing phase of a death penalty or life without parole case, the trial court should instruct the jury regarding the purpose of victim impact evidence. For example, the trial court might charge:

> The prosecution has introduced what is known as victim impact evidence. Victim impact evidence is not the same as evidence of a statutory aggravating circumstance. Introduction of victim impact evidence does not relieve the state of its burden to prove beyond a reasonable doubt the existence of a statutory aggravating circumstance. This evidence is simply another method of informing you about the harm caused by the crime in question. To the extent that you find that this evidence reflects on the defendant's culpability you may consider it, but you may not use it as a substitute for proof beyond a reasonable doubt of the existence of a statutory aggravating circumstance.

3. During the sentencing phase, the state presented testimony regarding Turner's aggressive and threatening behavior to jail personnel prior to trial. To rebut this evidence Turner called a warden of a state prison to testify that although inmates often act out prior to reaching state prisons, once incarcerated, those under a life sentence exhibit a pattern of behavior that is manageable. This evidence did not relate to the individual defendant or the crime at issue. Therefore, the trial court did not err in excluding it.[13]

4. During the sentencing phase, the state introduced evidence of Turner's participation in another robbery in July 1994 in which Turner, Crowder and Boyer used the same modus operandi of assaulting and kidnapping the manager of a restaurant to obtain the security codes and safe combination for the restaurant. Neither the manager nor his roommate, who was also assaulted during this robbery, could identify Turner as the assailant; only Martin Boyer, Turner's accomplice, testified that Turner participated in the robbery. Turner contends that this evidence was inadmissible under OCGA § 24-4-8, which requires the corroboration of the testimony of an accomplice who is the sole witness to establish the elements of a felony prosecution. OCGA § 24-4-8 does not, however, govern the admissibility of

---

[12] See *State v. Muhammad*, 678 A2d 164 (N.J. 1996); *Cargle v. State*, 909 P2d 806, 828-829 (Okla. Crim. App. 1995), cert. denied, ___ U. S. ___ (117 SC 100, 136 LE2d 54) (1996); *Evans v. State*, 637 A2d 117 (Md. 1994), cert. denied, 513 U. S. 833 (115 SC 109, 130 LE2d 56) (1994).

[13] *Franklin v. State*, 245 Ga. 141, 151-152 (263 SE2d 666) (1980).

other crimes evidence. Rather, the identity of the defendant as a participant in another crime must be established by "sufficient" evidence.[14] The testimony of the accomplice as well as the other circumstantial evidence linking Turner to the separate robbery satisfied this standard.

5. Turner also raises two enumerations relating to voir dire. The trial court excused two jurors based on their opposition to the death penalty. Turner contends neither juror was irrevocably committed to vote against the death penalty and thus their removal was error under *Witherspoon v. Illinois*.[15] Because Turner did not receive the death penalty, *Witherspoon* provides no basis for reversal.[16]

6. During voir dire, the trial court prevented Turner from questioning a juror regarding his belief of the meaning of a life sentence. OCGA § 17-10-31.1 (d) requires the trial court to instruct the jury on the meaning of life imprisonment and life without parole. Because the trial court instructed the jury on the meaning of the sentencing options, the juror's beliefs regarding the *meaning* of those options were not a proper subject for voir dire. Turner did not seek to question the juror about any prejudices or biases he may have had regarding a sentence of life without parole that may have seriously impaired his performance of his duties and, therefore, we do not consider that issue here.

7. We have reviewed Turner's contentions regarding the guilt-innocence phase and find they contain no error requiring reversal.[17]

*Judgment affirmed. All the Justices concur.*

SEARS, Justice, concurring.

I concur with the majority's rulings concerning the admission of victim impact statements, and jury instructions regarding such statements. I write separately, however, to stress the importance of the majority's finding that neither of the impact statements in this case emphasized the victim's social status, and to caution trial courts against permitting any such emphasis in impact statements in future cases.

---

[14] *Smith v. State*, 267 Ga. 363, 364 (478 SE2d 379) (1996).

[15] 391 U. S. 510, 515 (88 SC 1770, 20 LE2d 776) (1968).

[16] *Bumper v. North Carolina*, 391 U. S. 543, 545 (88 SC 1788, 20 LE2d 797) (1968); *Curtis v. State*, 224 Ga. 870, 872 (165 SE2d 150) (1968); *Partner v. Snider*, No. 92-56477, 1994 U. S. App. LEXIS 14750 (9th Cir. June 6, 1994) (unpublished) (no *Witherspoon* error where sentence is life without parole).

[17] Turner contends that the trial court erred in denying a motion to suppress evidence seized from his apartment pursuant to a search warrant; that the trial court erred in denying his motion to suppress his custodial statements; and that the trial court erred in denying two motions for mistrial when the state made reference to a witness being held in an undisclosed location under an assumed name, and when an investigator mentioned in his testimony the existence of outstanding warrants for Turner.

The Georgia Constitution's prohibition against legislation with "the social status of a citizen" as its subject[18] is based upon the principle that an individual's standing in society is irrelevant to the even-handed administration of justice.[19] Consistent with this principle, it is established that a jury may not recommend capital sentencing based upon a victim's class or wealth.[20] This is so because, under our justice system, all victims are held in equal esteem, and accorded the same degree of reverence, no matter if they are rich or poor, loved or unloved, celebrated or anonymous. In other words, if we are to fulfill our obligation to ensure equal protection of the law, no victim can be valued over any other victim.

Otherwise, it is likely that juror passion (or dispassion), rather than clear and reasoned deliberation, might be allowed to dictate a criminal defendant's fate. To illustrate, consider the scenario where a homeless individual, a recent immigrant from Haiti suffering from alcoholism, is viciously attacked and murdered. Despite the heinous nature of the crime, it is possible that, due to certain prejudices, some jurors might be less sympathetic toward this victim than they would be toward, for example, a local kindergarten teacher and mother, who is subjected to a similar attack. However, the devastating impact of the attacks felt by both victims and their survivors cannot be distinguished along cultural, racial, or class lines, and any attempt to draw such distinctions during the sentencing phase of a criminal prosecution would, I believe, run afoul of the Constitution.

In a system based upon equal protection under the law, it is impermissible to infect the sentencing phase of a criminal prosecution with class-based distinctions, as they can only inject irrelevant, and sometimes inflammatory, considerations into the sentencing process. The basic premise of our free and democratic society, which the judicial branch is sworn to uphold, requires us to remain cognizant that every life has value. Moreover, permitting victim impact evidence to touch upon the victim's class, race, or social standing would, I believe, be an obvious violation of the prohibition against criminal sentencing based upon "passion, prejudice, or any other arbitrary factor." [21]

---

[18] Ga. Const. (1983), Art. I, Sec. I, Par. XXV.

[19] *Livingston v. State*, 264 Ga. 402, 404, n. 5 (444 SE2d 748) (1994); see *Scott v. State*, 39 Ga. 321, 324-327 (1869). Art. I, Sec. I, Par. XXV was added to the Georgia Constitution in 1868 to ensure equality in the eyes of the law, despite any racial or class-based societal distinctions. See McElreath, The Constitution of Georgia, §§ 107-116.

[20] *Livingston*, supra; *Ingram v. State*, 253 Ga. 622, 634 (323 SE2d 801) (1984).

[21] OCGA § 17-10-35 (c) (1); *Livingston*, supra. In the hypothetical discussed above, many people could be substituted for the immigrant victim — for example, people who do not work, or are elderly, or quite young, or a member of a minority group, or ignorant, or sick, or who are simply disenfranchised from societal norms.

For these reasons, it is imperative that trial courts, when admitting victim impact statements, ensure that the statements do not seek the jurors' consideration of the victim's social status, wealth, class, race, or any other similar distinction. Only then can the legislature's provision for the admission of victim impact statements, and this Court's sanctioning thereof, be reconciled with the constitutional mandate of fairness before the bar of justice.

DECIDED JULY 14, 1997.

*Hurl R. Taylor, Jr.,* for appellant.
*Cheryl F. Custer, District Attorney, Thurbert E. Baker, Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.