DECISION AND JUDGMENT ENTRY
On July 8, 1999, appellant, Thomas Craft, was indicted for aggravated murder, a violation of R.C. 2903.01(A); murder, a violation of R.C.2903.02(A); possession of criminal tools, a violation of R.C. 2923.04(A) and, gross abuse of a corpse, a violation of R.C. 2927.01(B). On March 3, 2000, appellant entered a plea of guilty pursuant to North CarolinaV. Alford (1970), 400 U.S. 25, to one count of voluntary manslaughter, a violation of R.C. 2903.03(A) and a felony of the first degree. Appellant also entered no contest pleas to possession of criminal tools[1] and gross abuse of a corpse, both fifth degree felonies.
The state's theory of the case was that appellant intentionally killed his wife and dismembered her body with a knife. He then attempted to dispose of her body parts at various locations in the state of Michigan in an effort to avoid detection. The defense claimed that appellant's wife, suffering from severe mental illness, committed suicide by stabbing herself in the chest. Appellant then dismembered and disposed of her body so his young children would not know their mother killed herself.
Appellant was sentenced to ten years in prison for voluntary manslaughter, one year in prison for possession of criminal tools and one year in prison for gross abuse of a corpse. The sentences were ordered to be served consecutively. Appellant now appeals setting forth the following assignment of error:
 "THE DEFENDANT'S MAXIMUM AND CONSECUTIVE SENTENCES ARE ILLEGAL AND CONTRARY TO BOTH HIS RIGHTS UNDER THE UNITED STATES CONSTITUTION AND OHIO STATUTORY LAW."
 I.
Appellant first contends that the trial judge failed to act as an impartial tribunal thereby denying appellant his right to a fair trial. Specifically, appellant contends that the trial court's bias against him was apparent at sentencing. In support of his claim, appellant cites to various comments made by the judge during the sentencing phase of the case:
 "This is the type of case that fans emotions, passions, of those who are the loved ones of the parties involved
* * *
 "There has been some rather vehement criticism of the justice system in this case. Judges read newspapers also. I too have received letters, as has the prosecutor. These have been generated by aroused citizens who are expressing outrage at what they perceive to be a case of justice awry. Injustice if you will.
* * *
 "Mr. Craft, even assuming that your version of the facts is true, what you did was criminal. You are asking for this court to grant you additional mercies and extenuations of considerations over and above what your attorneys have already been able to secure for you. You are asking for a lighter sentence. However, you have already received a major consideration in this case. Frankly, in this court's opinion any additional consideration, given the enormity of what happened here, is — would be unconscionable."
 "The Chief Justice of the Ohio Supreme Court, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced. Section 5(C), Article IV, Ohio Constitution."
State v. Mackey (Feb. 14, 2000), Warren App. No. CA99-06-065, unreported, See also, State ex rel. Pratt v. Weygandt (1956),164 Ohio St. 463, paragraph three of the syllabus; Jones v. Billingham
(1995), 105 Ohio App.3d 8, 11.
Appellant's exclusive remedy if he believed that the trial judge was biased or prejudiced against him at any stage of her trial was to file an affidavit of disqualification pursuant to R.C. 2701.03. Id. Accordingly, this court lacks jurisdiction to decide the merits of appellant's first argument.
 II.
Appellant next contends that the court's "findings" in support of appellant's maximum, consecutive sentences are not supported by the record.
Prior to the enactment of Senate Bill 2, which took effect on July 1, 1996, trial courts had virtually unlimited discretion in choosing a sentence within statutory guidelines. See, e.g., State v. Hill (1994),70 Ohio St.3d 25, 29, State v. Bruce (1994), 95 Ohio App.3d 169, 172,Columbus v. Jones (1987), 39 Ohio App.3d 87, 88. Accordingly, our standard of review was limited to examining whether the trial court abused its discretion in choosing a particular sentence. While Senate Bill 2 gives the trial courts some discretion in choosing an appropriate sentence, this discretion is no longer as broad as it was under the former law. State v. Smith,(Mar. 17, 1999), Meigs App. No. 98CA02, unreported. In conducting our review, we recognize that Senate Bill 2 places various controls upon judicial discretion through statutory guidelines stating various purposes, principles, presumptions, and factors the court must consider in making its sentencing determination.State v. Dunwoody,(Aug. 5, 1998), Meigs App. No. 97-CA-11, unreported.
"The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). R.C. 2953.08 states in pertinent part:
 "(A) In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
 "(1) The sentence consisted of or included the maximum prison term allowed for the offense by division (A) of section 2929.14 of the Revised Code, the sentence was not imposed pursuant to division (D)(3)(b) of section 2929.14 of the Revised Code, the maximum prison term was not required for the offense pursuant to Chapter 2925. or any other provision of the Revised Code, and the court imposed the sentence under one of the following circumstances:
"(a) The sentence was imposed for only one offense.
 "(b) The sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree."
The permissible sentencing range for a first degree felony is three to ten years. R.C. 2929.14(A)(1). Appellant was sentenced to ten years for the first degree felony of voluntary manslaughter. The permissible sentencing range for a fifth degree felony is six months to a year. R.C.2929.14(A)(5). Appellant was sentenced to a year for each of the fifth degree felony offenses of possession of criminal tools and abuse of a corpse. In that appellant was sentenced to the maximum prison term for each of the three individual offenses, he has a basis for an appeal as of right under R.C. 2953.08(A).
R.C. 2929.14(B) states:
 "(B) Except as provided in division (C), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
Appellant had never served a prison term. In the judgment entry of sentence, the trial judge specifically found for each of appellant's convictions that "the shortest prison term possible would demean the seriousness of the offense and would not adequately protect the public from future crimes by the defendant or others." We therefore conclude that the trial judge satisfied the requirements of R.C. 2929.14(B).
As discussed above, appellant received the maximum sentence for each of his three convictions. R.C. 2929.14(C) addresses maximum sentences stating:
 "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
In determining whether or not appellant committed the "worst form of the offense," the trial court is guided by a nonexhaustive list of factors found in R.C. 2929.12(B) which states:
 "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 "(6) The offender's relationship with the victim facilitated the offense.
 "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
 "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 "(9) If the offense is a violation of section 2919.25
or a violation of section 2903.11, 2903.12, or 2903.13
of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children."
In determining whether or not appellant exhibits a great likelihood of committing future crimes, the trial court is guided by R.C. 2929.12(D) which states:
 "[T]he sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
 "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense.
 "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
 "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 "(5) The offender shows no genuine remorse for the offense."
All three of appellant's sentences were ordered served consecutively for a total of twelve years in prison. R.C. 2929.14(E)(4) addresses consecutive sentences stating:
 "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Under R.C. 2929.19(B)(2)(c) and (d), if a trial court imposes the maximum prison term or consecutive terms, it must, "make a finding that gives its reason," for the imposition of the maximum or consecutive terms. Statev. Edmonson (1999), 86 Ohio St.3d 324.
In sentencing appellant to the maximum sentence for voluntary manslaughter, the court specifically found that appellant had committed the worst form of the offense. The court found that the victim of the offense suffered serious physical harm as a result of the offense and that appellant's relationship with the victim facilitated the offense. The court found that appellant showed no genuine remorse for the offense. The court twice repeated these findings in sentencing appellant to maximum prison terms for possession of criminal tools and abuse of a corpse. In ordering appellant's three sentences to be served consecutively, the court found that "* * * [c]onsecutive prison terms are necessary to protect the public from future crime or to punish the defendant and consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public." The court further found "* * * [t]he harm caused by the multiple offenses committed by the defendant was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the defendant's conduct * * *"
We have thoroughly reviewed the transcript of appellant's sentencing hearing as well as the judgment entry of sentence in this case. Our review shows that the trial court did nothing more than recite the required statutory language. While such a recitation of the court's findings is a necessary component of felony sentencing in the state of Ohio, it in no way satisfies R.C. 2929.19(B)(2)(c) and (d) which requires the judge to give his or her reasons for the findings made in support of maximum and consecutive sentences. Accordingly, we hold that the trial court erred in imposing maximum, consecutive sentences for voluntary manslaughter, possession of criminal tools and abuse of a corpse.
 III.
Finally, appellant contends that the court erred in finding that, appellant, in committing the offenses of possession of criminal tools and abuse of a corpse, caused physical harm to a person.
R.C. 2929.13 provides guidance to the sentencing court as to whether to impose a term of imprisonment. There is a presumption in favor of imprisonment for first and second degree felonies and guidance against imprisonment for fourth and fifth degree felonies. R.C. 2929.13(B)-(E). However, if the sentencing court finds that a prison term for a fourth or fifth degree felony is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and, if the court finds that the defendant is not amenable to an available community control sanction, the court must impose a sentence provided one of the following eight factors apply:
 "(a) In committing the offense, the offender caused physical harm to a person.
 "(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 "(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 "(d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
 "(e) The offender committed the offense for hire or as part of an organized criminal activity.
 "(f) The offense is a sex offense that is a fourth or fifth degree felony violation of section 2907.03, 2907.04, 2907.05, 2907.22, 2907.31, 2907.321
[2907.32.1], 2907.322 [2907.32.2], 2907.323 [2907.32.3], or 2907.34 of the Revised Code.
"(g) The offender previously served a prison term.
 "(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.
 "(i) The offender committed the offense while in possession of a firearm." R.C. 2929.13.
In imposing prison terms for appellant's fifth degree felony convictions, the court specifically found, for each offense, that prison was consistent with the purposes of R.C. 2929.11 and that appellant was not amenable to community control. The court also found, pursuant to R.C. 2929.13(B)(1)(a) and (b), that appellant caused physical harm to a person and that appellant made a threat to a person of physical harm with a deadly weapon in committing the offenses of possession of criminal tools and abuse of a corpse. The result of the court making all four of these findings was that the presumption against prison terms for appellant's fifth degree felony convictions was overcome.
Appellant contends that the presumption against imposing prison terms was never overcome because, in committing the two offenses at issue, it was not possible for him to have caused "physical harm to a person." Specifically, the offense of possession of criminal tools relates to appellant's possession of the knife used to dismember his dead wife's body. The offense of abuse of a corpse relates to appellant's actions in dismembering and disposing of his dead wife's body. Appellant contends his wife had ceased to be "a person" for purposes of the revised code
once she died. At her death, the revised code recognized her as a "corpse," different from "a person" and not mentioned in the eight factors enumerated in R.C. 2929.13(B)(1).
At first glance, appellant's semantic argument appears unduly harsh. However, when we look at appellant's argument in the context of the revised code, we must reluctantly conclude that appellant's analysis is correct.
The elements of R.C. 2927.01, abuse of a corpse, are as follows:
 "(A) No person, except as authorized by law, shall treat a human corpse in a way that the person knows would outrage reasonable family sensibilities.
 "(B) No person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities.
 "(C) Whoever violates division (A) of this section is guilty of abuse of a corpse, a misdemeanor of the second degree. Whoever violates division (B) of this section is guilty of gross abuse of a corpse, a felony of the fifth degree."
Appellant was found guilty of R.C. 2927.01(B), gross abuse of a corpse. It has been held that gross abuse of a corpse can be found in any attempt to conceal a body. See State v. Benge (Dec. 5, 1994), Butler App. No. CA93-06-116, unreported; State v. Eades (Feb. 25, 1994), Montgomery App. No. 13807, unreported; State v. Riggs (Oct. 4, 1993), Meigs App. No. 503506, unreported; State v. Wolf (Dec. 11, 1992), Lake App. No. 91-L-096, unreported; State v. Frazier (Dec. 18, 1991), Fairfield App. No. 13-CA-91, unreported; and State v. Hoeflich (June 22, 1989), Morrow App. No. CA-689, unreported. The committee comment to R.C. 2927.01 notes that:
 "[I]t covers conduct formerly prohibited by specific prohibitions against grave robbing and unlawful dissection of a corpse. It also includes other kinds of conduct, such as copulating with or otherwise mistreating a corpse."
The legislature has clearly decided to distinguish between offenses involving "persons" and "corpses." An offender who undertakes the dissection of a live person would no doubt be charged with the crime of the felonious assault or, depending on the victim's survival, murder. An offender who copulates with an unconsenting live person would likely be charged with the crime of rape. In all three of these scenarios, an offender faces a crime with a heavier penalty. "By defining a separate offense with a lesser penalty, the legislature obviously intended for the abuse of a corpse statute, R.C. 2927.01, to cover acts that are distinct from those which cause the death of the individual." State v. Whitsell
(1990), 69 Ohio App.3d 512, 531.
A scant amount of case law addresses the issue of "person" versus "corpse" under the Revised Code. We do, however, find the following case significant to our discussion. In State v. Collins (1990),66 Ohio App.3d 438, a young woman was raped and died during the incident. The defense argued that the rape statute required a living victim. The appellate court disagreed stating:
 "Even though the victim died during the incident in the present case, defendant's conduct, when viewed in its entirety, involved `indignities to the living,' unlike the conduct that R.C. 2927.01 contemplates. In the present case, defendant `engage[d] in sexual conduct' with the victim only after he had `purposely compel[led]' the still living victim `to submit by force.' R.C. 2907.02. The fact that the force was sufficient to kill the victim does not lessen the seriousness of defendant's actions."
Our conclusion that appellant, given the facts of this case, did not cause physical harm to a person for purposes of R.C. 2929.13, is not inconsistent with the above case. In Collins, the evidence showed that the offense of rape began while the victim was still alive, thus, the defendant was guilty of rape. In the instant case, there is no such overlapping time line. It is undisputed that appellant's wife was dead when appellant dismembered her with a knife and disposed of her body. Appellant, therefore, did "cause or threatened physical harm to a person" in committing the offenses of possession of criminal tools and abuse of a corpse.
Appellant's sole assignment of error is found well-taken. Accordingly, we hold that the trial court erred in sentencing appellant to maximum, consecutive terms without including reasons pursuant to R.C.2929.19(B)(2)(c) and (d). We further hold that the trial court erred in finding that appellant caused physical harm to a person and that appellant threatened physical harm to a person with a deadly weapon pursuant to R.C. 2929.13(a) and (b).
Upon consideration whereof, the judgment of the Fulton County Court of Common Pleas is affirmed in part with regard to appellant's conviction and reversed in part with regard to appellant's sentence.
Appellant's sentence is vacated and this case is remanded to the Fulton County Court of Common Pleas for resentencing. Costs to appellee.
 _____________________ Peter M. Handwork, J.
Melvin L. Resnick, J. CONCUR.
Richard W. Knepper, J. CONCURS AND WRITES SEPARATELY.
[1] Appellant specifically, on the record, entered a no contest plea to possession criminal tools "as it relates to the abuse of a corpse charge."